[No. A021733. First Dist., Div. Five. July 20, 1984.]

KATHLEEN COLLINS, Plaintiff and Appellant, v.
MARION WOODS, as Director, etc., et al., Defendants and Respondents.

440

**Counsel**

Stephen R. Nielson and Jacob J. Smith for Plaintiff and Appellant.

John K. Van de Kamp, Attorney General, Charlton G. Holland and Catherine M. Van Aken, Deputy Attorney General, for Defendants and Respondents.

**Opinion**

**KING, J.**—In this case, we hold that 1982 legislation which increased the state's ability to recover "nonwilful" overpayments to recipients under the aid to families with dependent children (AFDC) program cannot be applied to such overpayments made before the legislation's adoption. We therefore reverse the trial court's judgment.

Kathleen Collins began receiving AFDC payments in October 1981. In November 1981, she received a "nonwilful" overpayment of $168 from AFDC. The Humboldt County Department of Public Welfare (County) which administers the AFDC program notified Collins of its intent to re-

cover the overpayment by reducing her future AFDC payments.[1] Collins contested this reduction by requesting a hearing before a Department of Social Services (DSS) hearing officer, pursuant to Welfare and Institutions Code section 10950.

On February 17, 1982, prior to Collins' hearing, the Governor signed Assembly Bill No. 2, 1981-1982 first extra session, which eliminated the earlier restrictions on the County's ability to recover nonwilful AFDC overpayments.[2] DSS subsequently issued section 44-350.11 of its manual of policies and procedures: standards of assistance aid payments, which states, "[w]hen any overpayment was discovered prior to April 2, 1982, and the maximum adjustment period had not expired prior to April 1982, adjustment shall be continued as specified in Section 44-352 as long as necessary to recover the overpayment."[3]

In the DSS hearing on March 31, 1982, Collins argued the County had erroneously estimated her available resources (a bank account and car), exclusive of the AFDC grant, to justify recoupment of the November overpayment. In a decision dated June 23, 1982, the hearing officer agreed with Collins' contention and ordered the County to refund amounts incorrectly deducted from her March and April 1982 AFDC payments to recoup

---

[1] In November 1981, state law restricted the County's ability to recover nonwilful overpayments. Welfare and Institutions Code section 11004, subdivision (c), provided: "[a]ny person who makes full and complete disclosure of those facts as explained to him pursuant to subdivision (a) is entitled to rely upon the award of public social services as being accurate, and that the warrant he receives correctly reflects the award made, except that the county providing the social services shall be allowed a period of six months following the month of payment, or six months following the hearing provided in subdivision (f), within which to adjust any errors or changes in amount of grant resulting from changes in income or need which occur too late to be reflected in the grant for the current month. Whenever possible, adjustments or overpayments shall be prorated evenly over the adjustment period." (Stats. 1979, ch. 1170, § 9, p. 4564.)

In addition, section 11004, subdivision (f), provided, in relevant portion: "[c]urrent grants may be reduced because of prior overpayments only if the recipient has income or resources available in the amount by which the county proposes to reduce payment . . . ." (Stats. 1979, ch. 1170, § 9, pp. 4564-4565.)

[2] As amended, Welfare and Institutions Code section 11004, subdivision (c), states: "Current and future grants payable to an assistance unit may be reduced because of prior overpayments to the extent permitted by federal law. In every case, grant payments shall be reduced to a level no lower than 90 percent of the grant, when added to the family's liquid resources and income, appropriate to families in similar conditions to the assistance unit being adjusted. If permitted by federal law, grant payments to be adjusted because of prior overpayments caused by agency errors shall be reduced to a level no lower than 95 percent of the grant when added to the family's liquid resources and income, appropriate to families in similar conditions to the assistance unit being adjusted."

More importantly, the 1982 amendments eliminated provisions of former subdivision (f), which permitted recovery of overpayments only if the recipient had other available income or resources.

[3] Section 44-352 concerns the actual procedures of recovering overpayments.

442

the October 1981 overpayment. The hearing officer went on to note: "[a]s the adjustment period for the overpayment extended into May 1982 the County may begin to adjust the claimant's grant in accordance with the appropriate regulations and continue to adjust the grant until the overpayment is recovered. However, any overpayment adjustment in excess of four months following this decision must be preceded by adequate and, where appropriate, timely notice. When determining the amount which may be adjusted, the County must determine what resources claimant has available in accordance with appropriate regulations."

On July 21, 1982, the County notified Collins that pursuant to the hearing decision, the County was "starting to adjust out the overpayment amount from the 11/81 actual verses [sic] estimate overpayment, per the new regulations that went into effect May 1982."

Collins filed a complaint against DSS for injunctive and declaratory relief and a petition for writ of mandate in superior court, arguing that DSS was applying the new regulations retroactively to her. The trial court entered judgment in favor of DSS, ruling that: (1) Collins had not exhausted her administrative remedies, (2) the new regulations made only procedural changes, (3) the state Legislature intended that the new regulations apply to pending cases, and (4) the new regulations impaired no vested rights.

Collins first contests the trial court's finding that she failed to exhaust her administrative remedies before bringing the instant action. The administrative hearing on March 31, 1982, concerned the County's evaluation of her available resources to justify recoupment under the old statute. Neither Collins nor DSS mentioned the new law on recoupment of overpayments during the hearing. In his decision, however, the hearing officer said the County could "continue to adjust the grant *until the overpayment is recovered.*" (Italics added.) This conclusion clearly relied on retroactive application of the new statute because under the old statute, the County could only make grant adjustments for the six-month period following an overpayment. The County cited the hearing decision in support of continued grant adjustments, so the County believed the hearing officer had approved this action.

It would have been futile for Collins to pursue a second hearing on the retroactivity issue. In essence, she would be asking the hearing officer to reconsider his prior decision and invalidate DSS's regulations. ■ A party need not pursue administrative remedies when the agency's decision is certain to be adverse. (*Huntington Beach Police Officers' Assn.* v. *City of Huntington Beach* (1976) 58 Cal.App.3d 492, 499 [129 Cal.Rptr. 893]; *Ogo Associates* v. *City of Torrance* (1974) 37 Cal.App.3d 830, 834 [112

Cal.Rptr. 761].) Collins properly brought this action without initiating a pointless second hearing.

■ Collins next contends that retroactive application of the present Welfare and Institutions Code section 11004, subdivision (c), was improper for two reasons. First, the Legislature did not intend for this provision to have retroactive effect. Second, there is a presumption against retroactive effect because the revisions created substantive changes in the law.

Nothing in the language of subdivision (c) mandates retroactive application. DSS suggests the use of the words "current" and "prior" in subdivisions (c) and (d)[5] requires such application. It proposes that "current" refers to grants current as of the date of the amendment's passage; "future" grants are those made after the date of passage. Under these proposed definitions, the notice of provision of subdivision (d) would only apply to grant adjustments made immediately upon the amendment's passage; no notice would be required for all later grant adjustments. We must avoid this interpretation as it leads to an unfair and absurd result. (*California Mfrs. Assn. v. Public Utilities Com.* (1979) 24 Cal.3d 836, 844 [157 Cal.Rptr. 676, 598 P.2d 836].) A more sensible interpretation is that "current" refers to grants current as of the date of discovery of the overpayment; future grants are any subsequent grants to the recipient.

Other methods of determining the Legislature's intent are not helpful on the retroactivity issue. The Legislative Counsel's Digest of Assembly Bill No. 2 (1981-1982 First Ex. Sess.) states that the amendments "require collection of all [AFDC] overpayments," but it does not indicate whether this includes overpayments made before the amendments were adopted. The 1982 amendments were adopted to comply with the federal Omnibus Budget Reconciliation Act of 1981 (OBRA) Pub.L. 97-35; 42 United States Code §§ 601-676. The act required that states participating in the AFDC program must "provide that the state agency will promptly take all necessary steps to correct any overpayment or underpayment of aid under the State plan . . . ." (42 U.S.C. § 602(a)(22).) The act does not indicate whether states must recover overpayments made before OBRA's enactment.

Since there is no apparent legislative intent on retroactive application of the amended recoupment provisions, we start from the presumption that all

---

[5]"*Current* and future grants payable to an assistance unit may be reduced because of *prior* overpayments to the extent permitted by federal law. . . ." (Welf. & Inst. Code, § 11004, subd. (c); italics added.)

"Prior to effectuating any reduction of *current* grants to recover past overpayments, the recipient shall be advised of the proposed reduction and of his or her entitlement to a hearing on the propriety of the reduction." (Welf. & Inst. Code, § 11004, subd. (d); italics added.)

legislative enactments operate prospectively and not retroactively. (*In re Marriage of Bouquet* (1976) 16 Cal.3d 583, 587 [128 Cal.Rptr. 427, 546 P.2d 1371]; *DiGenova* v. *State Board of Education* (1962) 57 Cal.2d 167, 176 [18 Cal.Rptr. 369, 367 P.2d 865].) ■ We next must consider whether the two relevant changes in the amended statute were procedural or substantive, as the presumption of prospective operation does not affect procedural statutes, which may be applied to pending cases if vested rights are not affected. (*Strauch* v. *Superior Court* (1980) 107 Cal.App.3d 45, 49 [165 Cal.Rptr. 552].)

The first change permits the County to recover overpayments through grant adjustments for an unlimited time, while the former statute only allowed grant adjustment during the six months following an overpayment. This change is procedural and permissible, as it acts like an expansion of a statute of limitations. (See *Mudd* v. *McColgan* (1947) 30 Cal.2d 463, 468 [183 P.2d 10] ["a party has no vested right in the running of a statute of limitation."].)

The second change which permits a downward grant adjustment, regardless of the availability of other income or resources, is harder to categorize as procedural or substantive.

Under both the old and new statutes, AFDC recipients owed an obligation to the government to repay any overpayments. Under the old statute, however, the onus was entirely on the government to assure that payment vouchers were accurate. The old statute informed a recipient that, if he made "full and complete disclosure" of facts relating to his eligibility, he was "entitled to rely upon the award of public social services as being accurate, and that the warrant he receives correctly reflects the award made . . . ." (Former Welf. & Inst. Code, § 11004, subd. (c).) A case interpreting the former statute stated, "[a]bsent a statute so declaring, a recipient of public assistance is not liable for reimbursement of the state or county for welfare aid properly paid." (*Oliva* v. *Swoap* (1976) 59 Cal.App.3d 130, 136 [130 Cal.Rptr. 411]; see also *Ogdon* v. *Workmen's Comp. Appeals Bd.* (1974) 11 Cal.3d 192, 199-200 [113 Cal.Rptr. 206, 520 P.2d 1022].) The former statute was particularly concerned that needy children not be adversely affected by recoupment of AFDC overpayments. Former subdivision (f) provided, "[i]n no event shall the grant to a needy child be reduced unless the parents or other responsible persons have sufficient available resources or income to meet the current needs of the needy child according to the department standard during the period of reduction."

Recipients such as Collins, who had no income or resources apart from the AFDC grant, had no incentive under the old statute to verify the war-

rant's accuracy or return any overpayment; the statute explicitly absolved them from this responsibility. It gave recipients no absolute right to keep an overpayment,[6] but for most recipients no deduction could be made from future grants.

██   The amended statute, on the other hand, imposed a new responsibility on *all* recipients to repay *all* overpayments through grant adjustment. By shifting to the recipient the burden of assuring correct payments, the new statute made substantive changes which cannot apply retroactively without clear legislative intent. As noted above, former section 11004, subdivision (f), provided a condition precedent to the ability of the County to make a claim. (See *County of San Diego* v. *Muniz* (1978) 22 Cal.3d 29, 37 [148 Cal.Rptr. 584, 583 P.2d 109].) The statutory deletion of this condition precedent effected substantive change. Retroactive application of this change would violate "[o]ne of the fundamental considerations of fairness . . . that settled expectations honestly arrived at with respect to substantial interests ought not be defeated." (2 Sutherland, Statutory Construction (4th ed. 1973) § 41.05, p. 261.) If Collins had been warned in advance of this change, she might have checked the amount of her voucher more carefully or returned any overpayment she recognized. Since the changes are substantive and the Legislature did not clearly intend retroactive application, we follow the presumption that the new statute applies only prospectively.

The judgment is reversed.

Low, P. J., and Haning, J., concurred.

---

[6]Former section 11004, subdivisions (d) and (f), permitted grant adjustments if the recipient obtained income or other resources during the following six months.