[No. B014855. Second Dist., Div. Three. Nov. 25, 1986.]

DIANE L. SIMPSON, Plaintiff and Respondent, v.
UNEMPLOYMENT INSURANCE COMPENSATION
APPEALS BOARD, Defendant and Appellant;
EMPLOYMENT DEVELOPMENT DEPARTMENT,
Real Party in Interest and Respondent.

COUNSEL

John K. Van de Kamp, Attorney General, Anne S. Pressman and Karen L. Fried, Deputy Attorneys General, for Defendant and Appellant.

David B. Simpson for Plaintiff and Respondent.

No appearance for Real Party in Interest and Respondent.

## OPINION

**LUI, Acting P. J.**—We are faced with the question of whether wages for employment in the public sector can be used in determining eligibility for "state disability insurance (SDI)" benefits, which are available to workers in the private sector. We hold that, under the Unemployment Insurance Code, they cannot.

We reverse the trial court's grant of a petition for a writ of mandate ordering appellant, California Unemployment Insurance Compensation Appeals Board (Appeals Board), to award SDI benefits to respondent, Diane Simpson. Since Simpson has not prevailed in this action, her motion for attorney's fees under Code of Civil Procedure section 1021.5 must be denied.

### FACTUAL AND PROCEDURAL BACKGROUND

From mid-1971 through mid-1980, Diane Simpson (Simpson) worked in the private sector, earning wages subject to SDI tax. From September 1980 through October 1982, she worked at the University of California at Los Angeles (UCLA), where she was covered by the university's nonindustrial disability insurance (NDI) plan. Simpson again worked for a private employer from February 1983 through mid-July 1983; SDI worker contributions were withheld from her pay.

In July 1983, Simpson became disabled[1] and filed a claim for SDI benefits with the California Employment Development Department (EDD). Subsequently, she received a notice of determination from EDD, indicating that her claim had been disallowed because "[d]uring the base period established on your claim [i.e., January 1982-December 1982], you were not paid wages for employment by employers of not less than three hundred dollars ($300.00) . . . [n]ecessary to qualify for benefits."[2] In telephone conver-

---

[1]Simpson's pregnancy disability is recognized in Unemployment Insurance Code section 2626, subdivision (a).

All statutory references are to the Unemployment Insurance Code unless otherwise indicated.

[2]Simpson earned over $9,000 at UCLA between December 1981 and June 1982.

sations with EDD personnel, Simpson's attorney was informed that the sole reason for ineligibility was that during the base period Simpson had worked for the university and had therefore not contributed to the SDI fund.

Simpson appealed. A hearing was held before an administrative law judge (ALJ). The ALJ affirmed the EDD's determination, explaining, "[T]he evidence establishes that the claimant was a state employee rendering service for a public entity, and as such was limited to disability benefits provided by Section 2781 of the code.[3] The claimant did not receive wages during the base period that were taxable for disability insurance [i.e., SDI]. Therefore, although application of these code provisions seems harsh in the claimant's case, that is the law."

Simpson filed an appeal with the Appeals Board. The Appeals Board affirmed the decision of the ALJ, adopting the ALJ's statement of facts and reasons for decision as its own.

Simpson petitioned the superior court for a writ of mandate under Code of Civil Procedure section 1094.5. An alternative writ of mandate was later filed, ordering the Appeals Board to show cause why its decision in Simpson's case should not be set aside.

The Appeals Board filed an answer. In her reply, Simpson argued, "An individual is entitled to collect benefits under the particular state plan that she is contributing to at the time of her disability. It would make no sense to disqualify that individual solely because, at some earlier date, *she had been contributing money to the State under the name of the other State plan.*" (Italics added.)

At the hearing on the matter, the following colloquy took place:

"THE COURT: . . . [¶] I had some questions I was going to ask and then when Mr. Simpson's [Simpson's attorney] very well done reply memorandum came in, he answered them all, so I don't have to ask them. [¶] But the questions were going to be: What would the petitioner have received if she had still been employed by the university at the time of disability? [¶] She would have received non-industrial disability benefits from that fund [i.e., the Disability Fund].

"MR. SIMPSON: That's correct.

---

[3]This conclusion, although not questioned by either party in subsequent proceedings, was erroneous. (See discussion, *post,* at pp. 347-354.)

"THE COURT: Who would have paid them? [¶] *It's the same fund, is it not?*

"MR. SIMPSON: *That's correct.*

"THE COURT: That is what he answered to me in his reply memorandum. [¶] So that seems to me . . . to indicate very clearly that the petitioner is entitled to her benefits . . . . [¶] It's the same pot no matter which fund it is, which policy it is [i.e., SDI or NDI]. The Controller has the one fund there. So that is why I don't understand the State's position."

After the hearing, the court granted the petition, and ordered the Appeals Board to set aside its decision in Simpson's case and to include in her "base period" the wages she had earned as an employee of UCLA.

Simpson moved for attorney's fees under Code of Civil Procedure section 1021.5. After a hearing, the motion was granted.

The Appeals Board filed a timely notice of appeal.

APPELLANT'S CONTENTIONS ON APPEAL

Appellant contends:

1. The trial court's judgment was improper because, as a matter of law, SDI benefits are limited to employees whose "base period" wages were subject to SDI tax.

2. The court abused its discretion by awarding attorney's fees under Code of Civil Procedure section 1021.5, since none of the requirements of that section was met.

DISCUSSION

I

*The Trial Court Based Its Decision on an Erroneous Assumption Urged by Simpson: UCLA Employees Are Not Covered by Section 2781 and Do Not Contribute to the Disability Fund*

When an employee working in the private sector becomes disabled, the employee is not automatically entitled to SDI benefits; part 2 of the code (Disability Insurance) imposes a number of requirements. This appeal involves a dispute over the meaning of the code's requirement of "base period

. . . wages for employment by employers of not less than three hundred dollars ($300)." (§ 2652.)[4] The specific issue presented here is whether earnings must be subject to SDI tax in order to qualify as SDI "base period wages."

■ Simpson argues that, since her public sector university employment fits one of the definitions of employment in part 2, her university wages should qualify as base period wages for private sector SDI eligibility under section 2652.

Even if this argument could be supported logically (see Discussion, pt. II-B, *post,* at pp. 351-354), it would fail, because it is based on an incorrect assumption. Although the parties and the factfinders below assumed that Simpson's university employment fit within the definition of employment applicable to section 2781 (NDI) of part 2 of the code, this assumption is erroneous. Thus, the trial court's conclusion—that Simpson paid NDI tax into the disability fund while at UCLA and therefore should be able to draw SDI from that fund now—was based on incorrect information.

Section 2606 of part 2 defines the word "employment" for purposes of the entire part. For employment by a *public* entity,[5] the definition is limited to only six types of service. The fourth type is "[s]ervice performed by a state employee to the extent provided by Section 2781."

Section 2781 must be read together with sections 19878-19885 of the Government Code.[6] Taken together, section 2781 and section 19878 of the Government Code provide disability insurance for "state employees," who are defined as members of the Public Employees' Retirement System (PERS), members of the State Teachers' Retirement System (STRS), or employees of the Legislature.

When Simpson became disabled, she was a member of the University of California Retirement System (UCRS). Therefore, she was not a "state

---

[4]The base period is the year which begins 16 to 19 months *before* the claim is filed. (See § 2610.)

[5]Public entities are defined in section 605; they include the Regents of the University of California.

[6]Section 2781, in fact, makes reference to sections 18135-18142 of the Government Code. These sections, however, were repealed in 1981. In their place, Government Code sections 19878-19885 were added. Section 2781 has never been amended to reflect the repeal of Government Code sections 18135-18142.

Section 2781 provides that state employees are eligible for disability benefits on the *same terms* and conditions as are other employees covered by part 2, *except for* the variations in terms and conditions provided in chapter 2.4 (i.e., §§ 2782 and 2783) and in the Government Code. Thus, although the Government Code sections are labeled "Nonindustrial Disability Leave" rather than "Nonindustrial Disability Insurance," they do not constitute a separate plan, but instead provide the terms and conditions under which state employees, as defined, receive disability benefits.

employee" for purposes of NDI eligibility under section 2781. Instead, she was covered by the university's own "NDI" plan, which is not legislatively mandated.[7]

Although it is widely perceived as a state agency like all others, the University of California was established as a public corporation by an organic act (Stats. 1867-1868, ch. 244, p. 248), and was perpetuated as a public trust by the Constitution of 1879 (Cal. Const., art. IX, § 9). The general government and superintendence of the University is vested in the Regents of the University (Cal. Const., art. IX, § 9, subd. (a)).

Under section 9 of article IX of the Constitution, the Regents' powers of organization and government are broad, while the Legislature's power to regulate the university and the Regents is quite limited. This contrasts with the comprehensive power of regulation the Legislature exercises over other state agencies.

■ As interpreted by the courts, article IX bestows on the university a general immunity from legislative regulation. " " "The Regents have the general rule-making power in regard to the University . . . and are . . . fully empowered with respect to the organization and government of the University . . . ." [Citations.] "[T]he power of the Regents to operate, control, and administer the University is virtually exclusive. [Citations.]" " " (*San Francisco Labor Council* v. *Regents of University of California* (1980) 26 Cal.3d 785, 788 [163 Cal.Rptr. 460, 608 P.2d 277].)

As the court explained in *Regents of University of California* v. *Superior Court* (1976) 17 Cal.3d 533, 537 [131 Cal.Rptr. 228, 551 P.2d 844], "the University is intended to operate as independently of the state as possible. [Fn. omitted.]"

There are three areas in which legislative regulation of the university exists: "First, the Legislature is vested with the power of *appropriation,* preventing the regents from compelling appropriations for salaries. [Citations.] [¶] Second, it is well settled that general *police power* regulations governing private persons and corporations may be applied to the university. [Citations.] . . . [¶] Third, legislation regulating public agency activity not generally applicable to the public may be made applicable to the university when the legislation regulates *matters of statewide concern not involving*

---

[7]Supplemental information provided by EDD indicates that the Regents of the University of California carry, through their private insurer, Prudential Insurance Company, a program of disability insurance comparable to that provided by section 2781, which the University also calls "NDI." This information is not a part of the record on appeal and therefore is not relied upon in our analysis.

*internal university affairs.* [Citation.]" (*San Francisco Labor Council, supra,* 26 Cal.3d at p. 789, italics added.)

Section 2781 does not fall within any of these three categories. This fact was recognized by the Legislature when it did not include UCRS members in the definition of "state employee" for purposes of section 2781.

## II

*The Trial Court Erred as a Matter of Law: To Qualify as Section 2652 Base Period "Wages for Employment," Wages Must Be Subject to SDI Tax*

■ Simpson contends that "wages for employment," for purposes of section 2652 (SDI base period calculations), need not be limited to wages subject to SDI tax.

■ The proper interpretation and application of statutes is a matter of law for the courts. (*Pacific Legal Foundation* v. *Unemployment Ins. Appeals Bd.* (1981) 29 Cal.3d 101, 111 [172 Cal.Rptr. 194, 624 P.2d 244]. See also Evid. Code, § 310, subd. (a).) Construing section 2652, the trial court agreed with Simpson and held that her university-earned wages—which were not subject to SDI tax—should be included when computing SDI base period wages.

The reviewing court may give deferential consideration to the trial court's interpretation of a statute, but it is not bound by the interpretation. (*Generes* v. *Justice Court* (1980) 106 Cal.App.3d 678, 681 [165 Cal.Rptr. 222].) ■ An administrative agency's conclusions of law are subject to de novo review by the Court of Appeal, independent of the trial court. (*Ghent* v. *Unemployment Ins. Appeals Bd.* (1986) 183 Cal.App.3d 1167, 1171 [228 Cal.Rptr. 631], citing *Carmona* v. *Division of Industrial Safety* (1975) 13 Cal.3d 303, 310 [118 Cal.Rptr. 473, 530 P.2d 161].) Applying well-settled rules of statutory construction, we find that a conclusion different from the trial court's is compelled.

### A. *Liberal Construction Cannot Enlarge the Terms of a Statute*

■ An important principle of statutory construction is that a law must be interpreted liberally so as to effectuate the purposes of the law and the intent of the Legislature. (*People* v. *Aston* (1985) 39 Cal.3d 481, 489 [216 Cal.Rptr. 771, 703 P.2d 111]; see also Code Civ. Proc., §§ 4, 1859.)

In the case of disability insurance law, the intent of the Legislature is explicit. Section 2601 explains that "[t]he purpose of this part [i.e., pt. 2

of div. 1 of the code, covering both SDI and NDI benefits] is to compensate in part for the wage loss sustained by individuals unemployed because of sickness or injury and to reduce to a minimum the suffering caused by unemployment resulting therefrom."

Section 2601 expresses the rule of construction in *Aston* by providing: *"This part shall be construed liberally in aid of its declared purpose* to mitigate the evils and burdens which fall on the unemployed and disabled worker and his family." (Italics added.)

Simpson correctly argues that "the mandate of § 2601 . . . means that interpreting bodies have a duty to construe and apply the disability code in a way which best assists unemployed and disabled persons, such as [her]."

■ Another important principle of statutory construction is that statutes must be interpreted so as to avoid absurd or unfair results. (*Collins* v. *Woods* (1984) 158 Cal.App.3d 439, 443 [204 Cal.Rptr. 650], citing *California Mfrs. Assn.* v. *Public Utilities Com.* (1979) 24 Cal.3d 836, 844 [157 Cal.Rptr. 676, 598 P.2d 836].) Simpson argues, "Simply because [she] once worked for the State . . . then left that job to work for a private employer, during which time she became disabled, the BOARD wants to exclude her from being able to recover *any* type of disability benefits what-soever . . . . [¶] This would be shockingly unfair. Surely this would be a 'Catch-22' which was *never* intended by the Legislature."[8]

While it is clear that the general legislative intent in enacting disability insurance law was to aid disabled workers like Simpson, it appears that the situation presented by Simpson's case—the problem of public employees who become disabled soon after leaving public service—is one that the Legislature simply never anticipated. ■ Although the result in her case may appear to be inequitable, we cannot, under the guise of liberal con-struction, enlarge the clear provisions of the statute. (*Estate of Tkachuk* (1977) 73 Cal.App.3d 14, 18 [139 Cal.Rptr. 55]; Code Civ. Proc., § 1858.) Liberality of interpretation cannot accomplish an end outside the terms of the statute, however desirable such a result might be. (*State of California* v. *Industrial Acc. Com.* (1957) 151 Cal.App.2d 147, 149 [311 P.2d 42].)

B. *The Statutory Framework as a Whole Requires That SDI Base Period Wages Must Be Subject to SDI Tax*

■ Simpson argues that all of the definitions of the word "employ-ment"—both public and private—set forth in part 2 of the code apply to

---

[8]It appears that Simpson would be *better off* if, instead of working for the university during her base period, she had received no wages because she was either: unemployed but seeking work; compensated at irregular intervals; unemployed because of a trade dispute; serving in the military; or industrially disabled. In each of those cases, the code provides special procedures for determining base period wages. (See §§ 2612, 2657, 2658, 2770, 2776.)

section 2652, which requires, for SDI eligibility, base period wages "from employment" of at least $300. ■ We view Simpson's contention in light of the long-standing rule of statutory interpretation that the various parts of a statute must be harmonized by considering each clause or section in the context of the statutory framework as a whole. (*Cory* v. *Poway Unified School Dist.* (1983) 147 Cal.App.3d 1158, 1168 [195 Cal.Rptr. 586].)

■ This rule is particularly important in the case of part 2 of the code, which sets out the provisions of three separate disability plans: the *SDI* program, which adopts to some extent the provisions of part 1, unemployment insurance; the *NDI* program, which incorporates some of the provisions of SDI, but which is largely set forth in title 2 of the Government Code; and *voluntary plans,* which are adopted by some employers in place of SDI and NDI.

Considering section 2606 in the context of other sections, as well as part 2 as a whole, we conclude that the definition of employment which includes service by state employees was intended to apply only to the sections dealing with NDI benefits for state employees, and cannot apply to section 2652, which establishes eligibility for private sector SDI benefits.

1. *Part 2 of the Unemployment Insurance Code and Section 19879 of the Government Code Establish NDI and SDI as Two Distinct Systems*

An examination of part 2 of the Unemployment Insurance Code reveals that SDI and NDI are two entirely separate and quite different systems. They differ in terms of eligibility, benefits, and funding.[9] There is no overlap between the two systems, or between SDI and UCLA's NDI plan.

---

[9]Although section 2781 provides that, with certain exceptions, "a state employee shall be eligible for nonindustrial disability benefits on the same terms and conditions as are specified [for SDI]," the exceptions seem to swallow the rule. The SDI provisions which are *not* applicable to NDI include: sections 2901-2903 (ch. 4, contributions); sections 3001-3015, 3051, 3075 (ch. 5, financial provisions); sections 3251-3272 (ch. 6, voluntary plans); sections 2652-2658 (ch. 2, art. 2, computation); sections 2765-2772 (ch. 2, art. 6, rights of trainees); sections 2775-2778 (ch. 2, art. 7, rights of industrially disabled persons); and sections 2610, 2611, 2625, 2712, 2712.5 (relating to validity of claims, disability base period, and settlement of disputed claims). NDI eligibility and benefits, for the most part, are described in Government Code sections 19878-19885. Section 19880 states, "In case of any conflict between the provisions of Part 2 . . . of the Unemployment Insurance Code and the provisions of this chapter, the provisions of this chapter shall prevail."

In terms of benefits, NDI provides one-half of the employee's *current* full pay (up to $125 per week) for up to 26 weeks for any one disability benefit period. (Gov. Code, § 19879, subd. (a).) Under SDI, the weekly benefit amount is based on the wages *previously* earned by the employee in the highest quarter of his or her base period. (§ 2655.) In 1983, when Simpson filed her claim, the maximum weekly benefit amount was $175 for 39 weeks. (See § 2653.5, former § 2655 [amended in 1983, applicable to disabilities commencing on or

Simpson argues that if payments were made into a disability fund on a worker's behalf during the base period, the worker should be able to draw from these funds during his or her disability. However, the mechanism for making this withdrawal does not exist.

Section 19879 of the Government Code clearly states that "in no case shall benefits be payable for any day on and after . . . separation . . . from state service." UCLA's NDI plan has the same restriction. Simpson is requesting benefits for a disability that occurred nine months after she separated from UCLA. Knowing that UCLA will not pay her directly, she requests, in effect, that the SDI fund pay her and obtain reimbursement from UCLA. While the Legislature did provide mechanisms for reimbursement in other cases,[10] none is provided for transfers of funds between SDI and UCLA or NDI.

Because of the separateness of the SDI and NDI programs, and the lack of any mechanism for transferring funds between them, we conclude that a worker who made no employee contributions to SDI during his or her base period has no cognizable wages "from employment" for purposes of section 2652.

2. *Section 2901 Excludes Wages That Are Not Taxed by SDI From Base Period Wages*

As noted above, section 2652 establishes a minimum base period income of $300 in wages *for employment by employers* for SDI eligibility. Section 2901 provides: "Each individual performing services *for an employer in employment* shall contribute to the Disability Fund the contributions required of such individual by Sections 984 and 985 [establishing a formula for calculating the rate of worker contributions]." (Italics added.)

---

after Jan. 1, 1984].)

NDI funds are not "pooled" with SDI funds. Worker contributions for SDI are deposited in the disability fund. (See §§ 984, 985, 2901, 3008.) The disability fund is a special fund in the state Treasury, held in trust by the state Treasurer and administered under the direction of the Director of EDD. (See § 3001.) There are no worker contributions for NDI. Apparently, the only NDI funds which are deposited in the disability fund are amounts for the added administrative costs of processing claims. (See § 2783, subd. (b).)

[10]For example, part 1 (unemployment compensation) provides a detailed system for interstate and federal cooperation. (§§ 451-456.) Part 2 provides for the transfer of funds between the disability fund and voluntary plans after settlement of disputes over claims liability between SDI and voluntary plans. (§§ 2712, 2712.5.)

Taken together, these sections support the conclusion that "wages for employment" for the purpose of SDI base period calculations include only wages from which SDI tax was contributed to the disability fund.[11]

## III

### Because Simpson Did Not Prevail, Attorney's Fees Cannot Be Awarded

▬▬ The trial court awarded Simpson attorney's fees under Code of Civil Procedure section 1021.5, stating that "an important right affecting the public interest was vindicated here." In addition, the court commended Simpson's attorney for his work and adjusted the base amount awarded upward by 20 percent to "reward excellence."

We agree that continuity of disability benefits for public employees who make the transition to the private sector is an important issue affecting a large class of persons, and that Simpson's attorney argued the issue forcefully. However, under the Unemployment Insurance Code, Simpson's arguments fail, and attorney's fees cannot be awarded to her.

### CONCLUSION

The purpose of disability insurance law is "to mitigate the evils and burdens which fall on the unemployed and disabled worker." (§ 2601.) Although respondent Simpson was a disabled worker when she filed her claim, we cannot, under the guise of statutory construction, rewrite the law to provide benefits for Simpson where none are authorized.

During her base period, Simpson was covered by UCLA's "NDI" plan, which is administered independently from the Unemployment Insurance Code. Even if she had been covered by the statutory NDI, she would not prevail in this appeal. Part 2 of the code as a whole establishes SDI and NDI as distinct systems with no mechanism for reciprocity between them.

Until the Legislature decides to remedy this situation, only those wages that were subject to SDI tax will qualify as base period wages under section

---

[11]The Legislature has explicitly provided one exception to this requirement of worker contributions. Section 3263 provides that "[a]n employee who has ceased to be covered by an approved *voluntary plan* shall, if otherwise eligible, thereupon immediately become entitled to benefits from the Disability Fund," even though he or she has not made contributions to the disability fund. (Italics added.) Disability claims filed pursuant to this section are paid from the "Unemployed Disabled Account," a special account within the disability fund. (§ 3012, subd. (b).)

The Legislature has made no similar exception for employees who have ceased to be covered by NDI.

2652. We urge the Legislature to consider the inequity of this result, and to consider the merits of modifying the code so that employees who become disabled soon after they leave the public sector are not left unprotected.

### DISPOSITION

The judgment is reversed and remanded, with instructions for the trial court to enter a new order denying respondent's petition for writ of mandate and her motion for attorney's fees. Each party shall bear its own costs on appeal.

Kennard, J.,* concurred.

Danielson, J., concurred in the result.

A petition for a rehearing was denied December 22, 1986.

---

*Assigned by the Chairperson of the Judicial Council.