[No. 6581.]

## FOLTZ *v.* HOGE ET AL.

HASTINGS LAW COLLEGE, UNIVERSITY OF CALIFORNIA.—It was the intention of the Act of March 28th, 1878, creating the Hastings Law College in the University of California, that the College should affiliate with, and be governed by the laws applicable to, the University—except as otherwise provided in the act, or in the act creating the University.

SAME—FEMALE STUDENTS. — An applicant for admission as a student to the Hastings Law College cannot lawfully be rejected on the sole ground that she is a female.

APPEAL from a judgment for plaintiff, upon an application for *mandamus*, in the Fourth District Court, City and County of San Francisco. MORRISON, J.

The facts are stated in the opinion.

*T. B. Bishop*, for Appellant.

The statute (1877–8, p. 533) and the payment of $100,000 by Judge Hastings, constituted a complete contract between Hastings and the State, under which the college was founded. (Const. art. 4, § 31.) It is a private eleemosynary perpetual trust, and although not a corporation, its nature and character may be ascertained by way of analogy, from what has been de-

clared to be the attributes of corporations created for similar purposes. (*Dartmouth College Case*, 4 Wheat. 668–9 ; Potter on Corp. § 19.) Though a perpetuity, it has the express sanction of the Constitution (art. 11, § 16.)

Under the trust created by this contract, the directors named in it and their successors are the trustees ; and they have the entire control and management of the trust, subject only to the supervision of a Court of Chancery.

No power has been reserved in the act by the State, or by the founder. The entire control is given to the trustees, and there is no visitorial power. (*Phillips* v. *Bury*, 2 Durn. & E. 352 ; 2 Potter on Corp. § 742; *Dartmouth College Case*, 4 Wheat. 673–6.)

The very nature of the institution presupposes the necessary powers of fixing the qualifications of students ; of determining who shall and who shall not be admitted ; of exercising a wise and enlightened discretion upon all matters of government and of discipline which are essential to the success and usefulness of the College ; and this power existing, and having been given to the directors, includes the right to decide that it is not for the best interest of the College to admit females.

We submit, therefore, that the petitioner has no clear legal right ; and this she must have in order to maintain this action (Code Civ. Proc. §§ 1085–6 ; High. on Ext. Leg. Rem. § 10.) The writ never issues when the performance of the duty rests in discretion.

The directors are not controlled by the general law which regulates the University. The act of foundation, it is true, makes the College the Law Department of the University, but it does not give the Regents any control of it. The founder preferred to trust the management of the College to the members of the great and conservative profession for whose advancement it was created, who might naturally be supposed to best understand its interests, and most likely to promote them.

By the contract, therefore, the whole business of the College was given to the directors ; and it is a branch of the University only for the purpose of enjoying the sanction of its name, and the receiving of degrees.

The law has never given to females even the right of admission to the University. The claim of right is based upon § 17, Pol. Code; but it is clearly untenable. If it were allowed, it would make women eligible to every non-elective office in the State. (Pol. Code, § 481.)

*Clara S. Foltz*, Respondent *in pro. per.*

Mandamus is the proper and only remedy. (Code Civ. Proc. §§ 1085–6; Moses on Mand. 146–7; Ang. & Ames on Corp. § 707.)

The University of California is a State institution, established by the Legislature in accordance with a constitutional provision. (Const. § 4, art. 9; 12 Stats. at L. 503.)

The Hastings Law College is a department of the State University, and subject to the general laws governing the University. (Stat. 1867–8, p. 248; Stat. 1877, p. 533.) Discretionary power to regulate and manage cannot be used to exclude one class of citizens while open to others. (*People* v. *Board of Ed. of Detroit*, 18 Mich. 471.) The power to regulate is not the power to prohibit. (Ibid.; *Nourse* v. *Merriam*, 8 Cush. 11.) The by-laws, rules and regulations of corporations are not to be contrary to, nor inconsistent with the laws of the State.

By the COURT:

Action for a mandate to compel the defendants, who are the Directors of the Hastings College of the Law, to admit the plaintiff as a student of the College. It is averred in the petition, and not denied in the answer, that the plaintiff is a citizen and resident of this State; that she is over the age of twenty-one years; that she is of good moral character; that she is entitled to practice as an attorney and counsellor-at-law, and is now a regular practicing attorney of the Court in good standing; and that she duly made application for admission as a student in the College, and tendered the requisite fee, but that the Directors rejected her application, and refused to permit her to enter as a student of the College.

The answer avers that the College was founded by S. C. Hastings, under and by virtue of the act entitled " An Act to create Hastings College of the Law, in the University of the State of California," approved March 26th, 1878, (Stat. 1877–8, p. 533); that said Hastings paid into the State Treasury the sum of $100,000 mentioned in the act, and thereupon founded and established the " Hastings College of the Law," and that the same has since been managed by the Board of Directors mentioned in the act. It admits that the defendants refused to permit the plaintiff to enter as a student of the College, but avers that they so refused, " because they, in good faith, believed and determined that it was not wise or expedient, or for the best interest of the College, to admit any female as a student therein." It contains other averments respecting the power and discretion of the Board of Directors in the direction, management, and control of the College; but as they present only questions of law, they need not be further noticed at this time. The plaintiff moved for judgment on the pleadings, and the Court thereupon gave judgment that the peremptory writ of mandate issue, commanding the defendants to admit the plaintiff as a student in the College.

The question presented for decision, is whether the Board of Directors can lawfully reject the plaintiff's application for admission as a student in the College, on the sole ground that she is a female?

The Act of March 23rd, 1868, to create and organize the University of California, (Stats. 1867–8, p. 248) provides that " the Board of Regents may affiliate with the University, and make an integral part of the same, and incorporate therewith, any incorporated college of medicine or of law, or other special course of instruction now existing, or which may hereafter be created, upon such terms as to the respective corporations may be deemed expedient; and such college or colleges, so affiliated, shall retain the control of their own property, with their own boards of trustees, and their own faculties and presidents of the same respectively," * * * (sec. 8); and it is provided by the eleventh section, that such college, so affiliated, may re-

tain its own property, to be vested in and held and managed by its own corporation. The eighteenth section provides, that " the immediate government and discipline of the several colleges shall be intrusted to their respective faculties, to consist of the President and the resident professors of the same, each of which shall have its own organization, regulate the affairs of its own college, recommending the course of study, and the text-books to be used for the approval of the Board of Regents, and, in connection with the President, as its executive officer, have the government of the students."

From those and other provisions of the act, it appears that a complete scheme was devised for the affiliation with the University of a College of Law, and that the general features of the plan for the government of the College were prescribed.

The Act of 1878, to create the Hastings College of the Law, appointed a Board of Directors of the College, and provides for filling vacancies which may occur. It also provides, that the Board shall appoint the officers of the College; that the College shall affiliate with the University; that the Faculty [Regents ?] of the University shall grant diplomas to the students of the College; that the Dean of the College " shall be *ex officio* of the Faculty of the University " ; that the College " shall establish a curriculum of studies, and shall matriculate students who may reside at the University of the State, as well as students residing in other parts of the State " ; and that " all the business of the College shall be managed by the Directors, without compensation." ) The plan for the organization and government of the College, as presented by those provisions, does not materially differ from that which is contained in the act to create the University—whatever differences there are, being in the details, but not in the general plan.

It is contended by the defendants, that the act confers upon the Board of Directors absolute discretion in the matter of the admission of students, subject only to the supervision of a Court of Chancery. Such discretionary power might have been granted, and could readily have been expressed in plain and unambiguous words ; but the act does not expressly grant such

discretionary power; and if it is possessed by them, it is to be implied from the provisions and the general intent of the act. Reliance is placed upon the provision that " all the business of the College shall be managed by the Directors, without compensation," as conferring discretionary power; but the purpose of the provision is to declare that Directors shall receive no compensation for their services. That is the obvious meaning of those words.

The provision that the College shall establish a curriculum of studies throws no light on the question; for if it be conceded that the power granted to the College, to establish a curriculum of studies, is not subject to the provision of the 18th section of the Act of 1868, above cited, (to the effect that the course of study and the text-books recommended for the College is subject to the approval of the Board of Regents) that power might be exercised without regard to the power here claimed.

There is nothing in the general framework of the Act of 1878, nor in the nature or purpose of such a College, that requires that its Directors should have more enlarged powers over the admission of students than should be possessed by the Regents and the Faculty of the University, in respect to the admission of students at large.

It was, in our opinion, the intent of the Legislature, that the College, when established, should affiliate with the University, and be governed by the laws applicable to the University, except as otherwise provided, either in the Act of 1868 or the Act of 1878; that the University and the affiliated College should constitute one institution and be governed by the same laws, with only such special provisions as might be required for the harmonious operation of its different branches. That would seem to be the necessary result of the affiliation of a College with the University. Would not the provision in each act, for the affiliation of the College with the University, be practically destroyed, by construing the provisions of the act for the organization of the College as conferring upon the Directors of the College, not only the management and control of its property, but also the absolute government of the College in all respects,

except in the issuing of diplomas? An affiliation imports a subjection to the same general laws and rules that are applicable to the parent institution, with such special exceptions as may expressly be made, and such as arise from the very nature and purpose of the affiliated institution. If this absolute power was intended to be conferred upon the Directors, the inquiry would be pertinent and suggestive, why the act should expressly give the control of the property of the College to the Directors, (sec. 8) or authorize the College to recommend the course of study, and the text-books to be used, to the approval of the Regents? If absolute discretionary power was intended to be vested in the Directors, why should particular power have specially been conferred? The inquiry suggests an argument of much force.

It is urged that no person can claim a strict legal right to be admitted to the College—that the very idea of a college implies the power to fix qualifications, and limit the number of students. It must be conceded that no one has such strict legal right without any limitations or conditions; but, on the contrary, the Directors may, as they should, exclude one whose moral character is bad, or who, by reason of tender years, has not sufficient capacity to study the law, or who applies for admission when the College already contains as many students as can advantageously be instructed therein, or who, for any sufficient reason, ought not to be admitted; but this does not tend to the conclusion that their discretion is unlimited—that the Directors are not subject to the laws applicable to the University.

If the absolute power claimed for the Directors is possessed by them, no reason can be suggested why they may not exclude every one who does not possess some qualification arbitrarily selected by them, such as nativity, time of residence in the State, or the like fanciful or accidental condition. They might thus exclude all except Indians, or those of foreign birth. The eighth section of the Act of 1878, though not remarkable for its perspicuity, seems to establish as one of the qualifications of students, that they must be residents of the State; and it contains one other provision which is very suggestive in this con-

nection. It declares that the College "shall matriculate students who reside at the University of the State." That is to be construed as meaning students of the University. The only qualifications prescribed for students of the University, are that they must be residents of the State, of the age of fourteen years or upwards, and of approved moral character. It is conceded that females are now, and for several years last past have been, admitted as students of the University; and the provision of sec. 17, of the Political Code, that words used in the masculine gender comprehend as well the feminine gender, would seem to entitle females to enter the University as students at large.

Females are entitled, by law, to be admitted as attorneys and counsellors in all the courts of this State, upon the same terms as males. The College was founded for the purpose of affording instruction to those who desire to be admitted, as well as those who have been admitted, to practice as attorneys and counsellors. It was affiliated with the University, and thus became an integral part of it, and in our opinion became subject to the same general provisions of the law, as are applicable to the University; and the same general policy which admitted females as students of the University, opened to them as well the doors of the College of the Law.

Judgment affirmed. Remittitur forthwith.