[S.F. No. 23440. July 12, 1976.]

THE REGENTS OF THE UNIVERSITY OF CALIFORNIA,
Petitioner, v.
THE SUPERIOR COURT OF ALAMEDA COUNTY, Respondent;
PHIL REGAN et al., Real Parties in Interest.

## COUNSEL

Thomas J. Cunningham, Donald L. Reidhaar, Milton H. Gordon, Aletha R. Titmus, Norman I. Lustig, David A. Dorinson and Kate K. Alderman for Petitioner.

Evelle J. Younger, Attorney General, Elizabeth Palmer, Acting Assistant Attorney General, N. Eugene Hill and William J. Power, Deputy Attorneys General, as Amici Curiae on behalf of Petitioner.

No appearance for Respondent.

Cushing, Cullinan, Hancock & Rothert, Hancock, Rothert & Bunshoft and Harlow P. Rothert for Real Parties in Interest.

## OPINION

**WRIGHT, C. J.**—The Regents of the University of California (the University) petition for a writ of mandate commanding respondent court

to grant the University's motions for judgment on the pleadings and summary judgment in an action brought against the University by the real parties in interest, Phil and Jo B. Regan. The principal question presented is whether the University, acting in the capacity of manager of its endowment fund, is exempt from the usury laws. (Cal. Const., art. XX, 2d § 22; Stats. 1919, p. lxxxiii; West's Civ. Code (1970) foll. § 1916 at pp. 431-433 [Deering's Gen. Laws (1954) Act. 3757].) We conclude it is not.

The University derives managerial control over its endowment from the Constitution.[1] In February 1955, in the course of investing its endowment, the University lent the Regans $175,000 secured by a deed of trust upon their royalty interest in certain oil and gas producing lands in Texas. On February 15, 1957, the unpaid balance of $149,931.28 was refinanced in a new $225,000 loan also secured by a deed of trust upon the Regans' royalty interest. It was then agreed that interest on the new loan be paid at the annual rate of 6 percent, that payments of $20,000, principal and interest, be paid annually, that the remaining balance be paid on February 15, 1970, or on any earlier date if the Regans so desired, and that the University have an option to acquire one-quarter of the Regans' royalty interest exercisable by payment of $100 on February 15, 1970, or on earlier repayment of the loan. The Regans repaid the loan in July 1968, and the University contemporaneously paid them $100 and exercised its option. The Regans then commenced an action to recover interest paid and penalties on the theory that the interest agreed upon plus the value of the option as a bonus rendered the transaction usurious. The University answered denying that the loans were usurious and moved for judgment on the pleadings and summary judgment.

---

[1]Article IX, section 9 provides in pertinent part:

"(a) The University of California shall constitute a public trust, to be administered by the existing corporation known as 'The Regents of the University of California,' with full powers of organization and government, subject only to such legislative control as may be necessary to insure compliance with the terms of the endowments of the university and the security of its funds. . . .

"
. . . . . . . . . . . . . . .

"(f) The regents of the University of California shall be vested with the legal title and the management and disposition of the property of the university and of property held for its benefit and shall have the power to take and hold, either by purchase or by donation, or gift, testamentary or otherwise, or in any other manner, without restriction, all real and personal property for the benefit of the university or incidentally to its conduct. Said corporation shall also have all the powers necessary or convenient for the effective administration of its trust, including the power to sue and to be sued . . . . The university shall be entirely independent of all political or sectarian influence and kept free therefrom in the appointment of its regents and in the administration of its affairs . . . .

"
. . . . . . . . . . . . . . . . . ."

The usury laws, though fraught with exceptions, purport to be generally applicable to agreements to lend money. The applicable laws were adopted by initiative in 1919 and by constitutional amendment in 1934. The initiative forbids any "person, company, association or corporation" to enter into a usurious transaction. (Stats. 1919, p. lxxxiii, § 2; West's Civ. Code (1970) foll. § 1916, § 1916-2 at p. 432 [Deering's Gen. Laws (1954) Act 3757, § 2].) The amendment proscribes usury by any "person, association, copartnership or corporation," fixes the operable usury rate at 10 percent per annum, and enumerates certain exceptions not applicable here. (Cal. Const., art. XX, 2d § 22.) There is no express exception from the usury laws for the state, its subdivisions or agencies.

We have recently restated the canon of statutory construction applicable to the determination of whether the University is subject to the usury laws. "[I]n the absence of express words to the contrary, neither the state nor its subdivisions are included within the general words of a statute. [Citations.] But this rule excludes governmental agencies from the operation of general statutory provisions only if their inclusion would result in an infringement upon sovereign governmental powers. 'Where . . . no impairment of sovereign powers would result, the reason underlying this rule of construction ceases to exist and the Legislature may properly be held to have intended that the statute apply to governmental bodies even though it used general statutory language only.' (*Hoyt* v. *Board of Civil Service Commrs.* (1942) 21 Cal.2d 399, 402 . . . .)" (*City of Los Angeles* v. *City of San Fernando* (1975) 14 Cal.3d 199, 276-277 [123 Cal.Rptr. 1, 537 P.2d 1250].)

In addressing the question whether application of the usury laws to the University would infringe upon sovereign governmental powers, we need not define precisely the extent of immunity, if any, which the University enjoys. The University is a public corporation but that status alone does not immunize its various functions. We note, for example, our holdings that a testamentary gift to the University was not exempt from a statute limiting charitable bequests (*Estate of Royer* (1899) 123 Cal. 614, 624 [56 P. 461]) and that land held by the University, but not in use for public purposes, was subject to street improvement assessments prescribed by law (*City Street Imp. Co.* v. *Regents* (1908) 153 Cal. 776 [96 P. 801]). In *Royer* we stated, "The university, while a governmental institution and an instrumentality of the state, is not clothed with the sovereignty of the state and is not the sovereign." (*Estate of Royer, supra,* 123 Cal. 614, 624.)

In choosing to invest its endowment by extending loans to borrowers such as the Regans, the University is acting in a capacity no different from a private university, corporation, or individual investing in a similar manner. The investment decisions the University makes are not uniquely governmental functions. Careful investment of endowment funds does of course provide revenue for the operation of the University, but its investment decisions are not so closely related to its educational decisions to cloak the former with immunity even if the latter are immune. We therefore conclude that the University is entitled to no sovereign protection in its lending decisions.

Our conclusion is supported by an examination of the constitutional provision itself. There the drafters established a generally applicable usury limit, exempting certain types of lenders, but providing for their regulation by the Legislature. (Cal. Const., art. XX, 2d § 22.) The provision for regulation of even the exempt classes indicates an intent to regulate all loans for the protection of the public. There is no indication of any intent that the University should not fall within the general class of nonexempt money lenders. To the contrary, the University is intended to operate as independently of the state as possible.[2] (See Cal. Const., art. IX, § 9.)

■ The University also prays for mandate on the further ground that the value of its option to acquire a royalty interest was contingent as a matter of law, with the result that the overall transaction was not usurious. The basic 6 percent interest rate agreed upon by the parties obviously is not itself usurious. In addition to the interest, however, the University acquired an option to purchase for $100 one-quarter of the Regans' royalty interest when the loan was repaid. The option was in the nature of a bonus and if its value was sufficient it could, together with the stated interest, allow the University to receive a usurious return on its investment. The parties agree that the value of the option in February 1957 is controlling but that value is contested and each party has offered an expert valuation.

---

[2]This is not to say that the present usury laws are effectively neutralizing the social harm at which they are directed. The inflation rate, which has recently exceeded the usury rate, even now might discourage nonexempt lenders from extending loans for personal, family or household purposes at the usury rate or less. Necessitous persons, unable to borrow from exempt lenders for such purposes, may still be driven to unprincipled lenders, while the present fixed rate may become a trap for the innocent lender.

The University relies on *Thomassen v. Carr* (1967) 250 Cal.App.2d 341 [58 Cal.Rptr. 297]. In that case the court affirmed a judgment for the lenders based on a finding that "the payment of legal interest was subject to one or more contingencies so that respondent's lawful profit was 'wholly placed in hazard.' "[3] (*Id.,* at p. 345.) The University argues that the value of its option was subject to the contingencies that oil would be produced in paying quantities both before and after repayment of the loan. It urges that return of a paying quantity of oil was further jeopardized by the uncertainty of the quantity of oil in the underground pool, the development of alternate energy sources, and the possible reduction in prices due to the international political situation. Although a variety of factors might have had bearing on the value of the option, we cannot conclude on the pleadings that the payment of interest was contingent as a matter of law and the parties should be put to their proof.

The alternative writ is discharged and the petition is denied.

McComb, J., Tobriner, J., Mosk, J., Sullivan, J., Clark, J., and Richardson, J., concurred.

Petitioner's application for a rehearing was denied August 11, 1976.

---

[3]The rule is stated thus: " 'It is also a general principle that when payment of full legal interest is subject to a contingency so that the lender's profit is wholly or partially put in hazard the interest so contingently payable need not be limited to the legal rate, providing the parties are contracting in good faith and without the intent to avoid the statute against usury.' " (*Thomassen v. Carr, supra,* 250 Cal.App.2d 341, 346.)