[No. A045392. First Dist., Div. Two. May 24, 1990.]

█GARY MICHAEL COUTIN, Plaintiff and Appellant, v. MALCOLM LUCAS, as Chief Justice, etc., Defendant and Respondent.

**[Opinion certified for partial publication.†]**

†Pursuant to rules 976 and 976.1, *California Rules of Court,* this opinion is certified for partial publication. The portions directed to be published follow.

## COUNSEL

Gary Michael Coutin, in pro. per., for Plaintiff and Appellant.

John K. Van de Kamp, Attorney General, N. Eugene Hill, Assistant Attorney General, Philip Callis and Victor D. Sonenberg, Deputy Attorneys General, for Defendant and Respondent.

## OPINION

**KLINE, P. J.—**

### INTRODUCTION

Gary Michael Coutin appeals the judgment of the Marin County Superior Court dismissing this action as to respondent Malcolm Lucas, Chief Justice of California, following the trial court's sustaining of respondent's demurrer without leave to amend. Appellant contends the court erred in sustaining the demurrer, and argues that respondent is ex officio president of the Board of Trustees of Hastings College, despite 1980 legislation repealing the designation of the Chief Justice as president of the board.

### STATEMENT OF THE CASE/STATEMENT OF FACTS

On April 18, 1988, appellant filed a complaint for declaratory and injunctive relief, naming as defendants West America Bank, the Regents of the University of California, Hastings College of Law, and Does 1 through 10,000,000. Styled a "[t]axpayer class action to enjoin an illegal transaction involving public funds and public property and for declaratory relief relating thereto," the complaint alleged various improprieties purportedly involving Hastings. As relevant to respondent, the complaint asserted that he was, as Chief Justice, "acting ex-officio as the President and a Director of the Hastings' Board of Directors."

On October 4, 1988, respondent was served by appellant as "Doe 1" in this action. Respondent demurred on the grounds that the complaint failed to state a cause of action as to him, in that the statute which designated the Chief Justice as president of the Hastings Board of Directors had been repealed in 1980. On December 16, 1988, the trial court announced it was sustaining the demurrer without leave to amend. On January 27, 1989, following hearing on appellant's motion for a "rehearing" the court sustained its prior ruling sustaining respondent's demurrer without leave to

amend and on February 10, 1989, judgment was entered dismissing the action as to respondent. A timely appeal followed.

## DISCUSSION

■ Appellant bears the burden of demonstrating either that the demurrer was sustained erroneously or that sustaining the demurrer without leave to amend was an abuse of discretion. (*Tafoya* v. *Hastings College* (1987) 191 Cal.App.3d 437, 440 [236 Cal.Rptr. 395].) We will deem the trial court's sustaining of the demurrer to be erroneous if appellant has stated a cause of action under any possible legal theory. (*Ibid.*) ■ " 'In assessing the sufficiency of a demurrer, all material facts pleaded in the complaint and those which arise by reasonable implication are deemed true. [Citations.]' " (*Ibid.*, quoting *Pollack* v. *Lytle* (1981) 120 Cal.App.3d 931, 939-940 [175 Cal.Rptr. 81].)

The crux of appellant's argument that the complaint stated a cause of action against respondent is that respondent serves ex officio as president of the Board of Hastings by virtue of the continuing effect of terms of the private trust of Serranus C. Hastings which appear as provisions of the 1878 act originally establishing Hastings College of the Law in the University of California. (Stats. 1877-1878, ch. CCCLI, at p. 533 et seq.) (Hastings Act.) In relevant part, the statute provided: "That the Chief Justice of the Supreme Court of the State . . . shall be the President of the Board of Directors, . . . ." (*Id.*, § 14, at p. 534.)

Respondent argues that the Legislature repealed that provision in 1980 when it deleted the provision from section 92205 of the Education Code, where it last appeared after having been codified originally in 1907 as section 1486d of the Political Code. (Added by Stats. 1907, ch. 335, § 1, p. 629.)

Appellant rejoins that the Legislature was without power to repeal that provision insofar as it bears upon matters exclusively internal to Hastings or to the University of California. (Cal. Const., art. IX, § 9.)

### I.

■ We reject appellant's contention that the 1980 repeal of Education Code section 92205 was ineffective because the original 1878 statute designating the Chief Justice as president of the board of Hastings was "constitutionalized" by article IX, section 9 of the Constitution of 1879 and could not be altered by the Legislature.

"In 1878, the Legislature enacted 'An Act to create Hastings' College of the Law, in the University of the State of California,' which authorized S.C. Hastings to found a law college on the condition that he pay to the state treasury $100,000, to be refunded only if the college ceased to exist or the state failed to provide specified funds. (Stats. 1878, ch. CCCLI, at p. 533 et seq.) The act provided that the 'College shall affiliate with the University of the State, upon such terms as shall be for the welfare of the College and University, and shall be the Law Department of the University.' The enabling legislation, inter alia, empowered Hastings' Board to manage all the law school's business; the Board was to fill its own vacancies and appoint officers of Hastings; the dean was to be an ex officio faculty member of the University; and the Regents of the University were to grant diplomas to Hastings students. Thus, the Legislature's general plan for the organization of the government of Hastings as an affiliate of the University was consistent in both the 1868 act creating the University and the 1878 act creating Hastings, even though there were some differences in the details. (*Foltz* v. *Hoge, supra,* 54 Cal. at p. 32.)" (*Tafoya* v. *Hastings College, supra,* 191 Cal.App.3d 437, 442.)

In 1879, article IX, section 9 of the California Constitution was enacted. It specified at that time that "[t]he University of California shall constitute a public trust, and its organization and government shall be perpetually continued in the form and character prescribed by the Organic Act creating the same, passed March twenty-third, eighteen hundred and sixty eight (and the several Acts amendatory thereof) . . . ."

It was upon this constitutional provision that the California Supreme Court relied in *People* v. *Kewen* (1886) 69 Cal. 215 [10 P. 393], to hold that the Legislature had no power to change the form of government of the college and that the act of March 3, 1883, purporting to transfer control of the college to the regents of the university, and the act of March 18, 1885, purporting to create a board of three trustees for the college, were prohibited by the organic act of 1878. (*Id.,* at p. 216.) Thus, the court reversed a trial court judgment removing the defendant from the office of registrar of Hastings, to which position he had been elected by the directors of the college named in the 1878 act creating it.

In 1907, the Legislature codified the 1878 statute as sections 1478-1486d of the Political Code. (Stats. 1907, ch. 335, § 1, p. 629; see Code Commissioner's note preceding § 1478, Deering's Political Code (1915 ed.).) At that point, the organic act creating Hastings had no existence separate from the code. (Cf. *Estate of Carraghar* (1919) 181 Cal. 15, 20 [183 P. 161]; *First Nat. Bank* v. *Pittsburgh, F. W. & C. Ry. Co.* (E.D.Pa. 1939) 31 F.Supp. 381, 385.)

At the time the Hastings Act was codified, section 4 of the Political Code provided in pertinent part: "The code establishes the law of this state respecting the subjects to which it relates, . . ." (Enacted Mar. 12, 1872.) With respect to continuation of prior statutes, section 18 of the Political Code provided: "No statute . . . is continued in force because it is *consistent* with the provisions of this Code on the same subject; but in all cases provided by this Code, all statutes . . . heretofore in force in this State, whether consistent or not with the provisions of this Code, unless expressly continued in force by it, are repealed and abrogated." (Italics added.) These same provisions appear in section 18 of the Code of Civil Procedure and section 20 of the Civil Code.

The California Supreme Court in *Estate of Carraghar, supra,* 181 Cal. 15, reiterated that the "codes . . . were intended as complete revisions of the existing laws upon the subjects embraced therein. That was the main purpose of their enactment. And section 20 of the Civil Code, and section 18 of the Code of Civil Procedure, were enacted for the very purpose of putting it beyond the realm of possible dispute that existing statutes on subjects covered by the codes, whether consistent or not with the provisions of the codes on the same subject, were abrogated, unless expressly continued in force. (*Id.*, p. 20.)

Codification of the Hastings Act did not occur until 1907. The language regarding the effect of codification upon existing statutes arguably could be read to affect only statutes predating the adoption of the Political Code in 1872. However, such an interpretation would violate the clear intent of those provisions to elevate the codes as the sole statutory authority upon subjects covered therein, unless otherwise explicitly continued.

In 1918, article IX, section 9 of the California Constitution was amended to delete the provision upon which *People* v. *Kewen, supra,* 69 Cal. 215, had relied to the effect that the university's "organization and government shall be perpetually continued in the form and character prescribed by the Organic Act . . . ." (Former Cal. Const., art. IX, § 9, as adopted 1879.) The 1918 amendment instead provided that the University "shall constitute a public trust, to be administered by the existing corporation known as 'The Regents of the University of California,' with full powers of organization and government, subject only to such legislative control as may be necessary to insure compliance with the terms of the endowments of the university and the security of its funds." (Cal. Const., art. IX, § 9, subds. (a), (f) 1879, amended 1918.)

As recounted by one commentator, the twofold purposes of the amendment were described in the ballot argument accompanying the proposed

amendments in 1918 as follows: "(a) To permit the adaptation of the details of the internal organization of the university to meet modern-day requirements; (b) to give to the alumni of the university direct representation on the governing body of the university.

"·  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"AMENDMENTS TO CONSTITUTION AND PROPOSED STATUTES WITH ARGUMENTS RESPECTING THE SAME 23 (1918) (voter information pamphlet for Nov. 5, 1918 California general election)." (Horowitz, *The Autonomy of the University of California Under the State Constitution* (1977) 25 UCLA L.Rev. 23, 26, fn. 9.) The ballot argument also stated that the amendment made " 'no change in the status of the university or of the regents . . . either as to the legislature or the public' " and that "[o]ther than the changes mentioned, the amendment makes no change whatever in the governing law of the university under which it has been conducted and administered." (*Ibid.*, quoting the voter information pamphlet.)

Although the constitutional amendment made no change at that time in the relationship between the Legislature and the university, by deleting that portion of article IX, section 9, that required the organization and government of the university to be perpetually continued in the form prescribed by its Organic Act, the amendment rendered the provisions of the Hastings Act (as codified in the Political Code and subsequently in the Education Code) subject to modification by the Legislature, within the limits set by the constitution. Those limits are that "[t]he university shall be entirely independent of all political or sectarian influence and kept free therefrom in the appointment of its regents and in the administration of its affairs, . . ." (Cal. Const., art. IX, § 9, subd. (f).)

In 1980, the Legislature repealed the provision of Education Code section 92205 which had designated the Chief Justice as president of the Hastings Board. Thus, since that repeal, no Chief Justice has sat as president. Certainly respondent, who was confirmed as Chief Justice in January 1987,[1] never served as president of the board.

## II.

We reject appellant's contention that in repealing the provision of Education Code section 92205, designating the Chief Justice as president of

---

[1] We take judicial notice of this fact pursuant to Evidence Code sections 452 and 459.

the Hastings board, the Legislature unconstitutionally violated the university's autonomy by interfering with internal governance of the university.[2]

■ "The California constitution grants broad autonomy to the University, subject to limited legislative interference." (*Tafoya v. Hastings College, supra*, 191 Cal.App.3d 437, 442.) Article IX, section 9, subdivision (a) now provides, as it did in 1980, in pertinent part: "The University of California shall constitute a public trust, to be administered by the existing corporation known as 'The Regents of the University of California,' with full powers of organization and government, subject only to such legislative control as may be necessary to insure the security of its funds and compliance with the terms of the endowments of the university and such competitive bidding procedures as may be made applicable to the university by statute for the letting of construction contracts, sales of real property, and purchasing of materials, goods, and services." Subdivision (f) further provides: "[The Regents] shall also have all the powers necessary or convenient for the effective administration of its trust . . . . The university shall be entirely independent of all political or sectarian influence and kept free therefrom in the appointment of its regents and in the administration of its affairs. . . . ." Hence, the university is intended to operate as independently of the state as possible. (*San Francisco Labor Council v. Regents of University of California* (1980) 26 Cal.3d 785, 789 [163 Cal.Rptr. 460, 608 P.2d 277]; *Regents of University of California v. Superior Court* (1976) 17 Cal.3d 533, 537 [131 Cal.Rptr. 228, 551 P.2d 844]; *Tafoya v. Hastings College, supra*, 191 Cal.App.3d at p. 443.)

■ The constitutional immunity from legislative control granted the university is not specifically extended to Hastings. (*Tafoya v. Hastings College, supra*, at p. 445.) However, Hastings is affiliated with the university and subject to the same general laws, except as otherwise expressly provided. (*Foltz v. Hoge* (1879) 54 Cal. 28, 33-34.) It is undisputed that limitations upon the Legislature's power to change the form of government of the university, or to interfere with its internal affairs, apply with equal force to the Legislature's power to affect the internal affairs or form of government of Hastings. (See *People v. Kewen, supra*, 69 Cal. 215, 216.)

■ At the same time, it is established that "the university is not completely free from legislative regulation." (*San Francisco Labor Council v.*

---

[2] The provision which we address was one of a series of amendments to the Education Code passed by the Legislature in 1980. (Stats. 1980, ch. 1155, § 31.6 et seq., p. 3855.) The Court of Appeal in *Tafoya v. Hastings College, supra*, 191 Cal.App.3d 437, 447, footnote 9, noted in dicta that several other provisions regarding the appointment and number of directors did not change the form of Hastings's government. We address only that provision deleting from section 92205 the designation of the Chief Justice as President of the Hastings Board of Trustees.

*Regents of University of California, supra*, 26 Cal.3d at p. 789.) In addition to the specific provisions set forth in article IX, section 9, cases have recognized three general areas in which the Legislature's own extensive powers may limit University autonomy: authority over the appropriation of state monies (*California State Employees' Assn. v. Flournoy* (1973) 32 Cal.App.3d 219, 233 [108 Cal.Rptr. 251]; *California State Employees' Assn. v. State of California* (1973) 32 Cal.App.3d 103, 109-110 [108 Cal.Rptr. 60]); exercise of the general police power to provide for the public health, safety, and welfare (e.g., *Regents of University of California v. Superior Court, supra*, 17 Cal.3d 533, 536-537; *Williams v. Wheeler* (1913) 23 Cal.App. 619 [138 P. 937]); and legislation on matters of "general statewide concern." (*Tolman v. Underhill* (1952) 39 Cal.2d 708, 712 [249 P.2d 280]; see generally, *San Francisco Labor Council v. Regents of University of California, supra*, 26 Cal.3d 785, 789; *Simpson v. Unemployment Ins. Comp. Appeals Bd.* (1986) 187 Cal.App.3d 342, 349 [231 Cal.Rptr. 690]; Note, *Autonomy and Accountability: The University of California and the State Constitution* (1987) 38 Hastings L.J. 927, 933.)

It is the third of these areas—legislation on matters of statewide concern—which respondent contends supports legislative deletion of the provision relating to the Chief Justice as board president. The initial statement and application of this limitation on University autonomy is found in *Tolman v. Underhill, supra*, 39 Cal.2d 708. There, the California Supreme Court held that legislation specifying the oath for public employment prevailed over university regulations specifying a different and more detailed oath. In holding that the legislation prevailed, the court declared:

"It is well settled, however, that laws passed by the Legislature under its general police power will prevail over regulations made by the regents with regard to matters which are not exclusively university affairs. [Citations.] There can be no question that the loyalty of teachers at the university *is not merely a matter involving the internal affairs of that institution but is a subject of general statewide concern.* Constitutional limitations upon the Legislature's powers are to be strictly construed, and any doubt as to its paramount authority to require University of California employees to take an oath of loyalty to the state and federal Constitutions will be resolved in favor of its action. [Citation.]" (39 Cal.2d at p. 712, italics added.)

Although *Tolman v. Underhill* could also be considered a police powers case, subsequent cases have relied upon it as authority for the proposition that legislation "may be made applicable to the university when the legislation regulates matters of statewide concern not involving internal university affairs." (*San Francisco Labor Council v. Regents of University of California,*

*supra*, 26 Cal.3d at p. 789; *Simpson* v. *Unemployment Ins. Comp. Appeals Bd., supra,* 187 Cal.App.3d 342, 349.)

It seems to us clear that the determination to eliminate the requirement that the Chief Justice of the state serve as president of the board of trustees of Hastings addresses a matter of statewide concern. We agree with respondent that unlike altering the size of the board or adding a student to the board, a legislative determination that the Chief Justice of California should not be involved with nonjudicial duties in a nonjudicial public entity, surely constitutes matters of transcending statewide concern, and is patently not " 'merely a matter involving the internal affairs of [the university].' " *Alex* v. *County of Los Angeles* (1973) 35 Cal.App.3d 994 [111 Cal.Rptr. 285], supports our decision. In that case, the court affirmed that judges were ineligible for public employment or public office. The court regarded the provision as being based upon a "compelling, legitimate state purpose and policy" (*id.,* at p. 1001), and recognized that a justification for such provision was " 'to conserve the time of the judges for the performance of their work' so as not to 'embarrass, if not in fact impede, the orderly and proper discharge of their judicial functions.' " (*Ibid.*)

Appellant argues that the legislation deleting the provision relating to the Chief Justice runs afoul of article IX, section 9 as it involves interference with the "internal governance" of Hastings.

The phrasing of the limitation in *San Francisco Labor Council* v. *Regents of University of California, supra,* 26 Cal.3d 785, 789, as matters of statewide concern "not involving internal university affairs" (*id.,* at p. 789) does lend some support to appellant's contention. However, we are convinced that the phrase does not mean that the university or one of its colleges is immune from the effects of legislation on matters of paramount statewide concern merely because that legislation may in some fashion affect the institution's internal affairs. The Supreme Court in *San Francisco Labor Council* relied upon *Tolman* v. *Underhill* as authority for this formulation of an area of legitimate legislative regulation. *Tolman* recognized the hegemony of the legislature in matters of statewide concern "which are not exclusively university affairs." (39 Cal.2d at p. 712.) *Tolman* nowhere indicates that legislation on matters of manifest statewide concern will be inapplicable to the university merely because it also relates to the internal affairs of the university. Indeed, the import of *Tolman* is that legislation on subjects of general statewide importance applies to the university *unless* the matter is *exclusively internal* to the university. (*Ibid.*; see also Note, *supra,* 38 Hastings L.J., at p. 933.) One commentator argues that the cases suggest three factors as guidelines for delineating the scope of article IX, section 9 as a limitation on the lawmaking power vested in the Legislature and for

establishing what are "exclusively University affairs" which fall solely within the regents' governance powers: "(1) the centrality of the subject matter to the functioning of the University as a university; (2) the degree of impairment of the Regents' 'full' powers of governance; and (3) the interest advanced by the legislative enactment." (Horowitz, *supra*, 25 UCLA L.Rev. at p. 36.)

*Regents of the University of California* v. *Superior Court, supra*, 17 Cal.3d 533, supports this type of analysis. There it was held that the university was subject, in lending money in the commercial market, to provisions of usury laws applying to "any 'person, company, association or corporation.'" In discussing university autonomy, the court found it unnecessary to define "the extent of immunity, if any, which the University enjoys." (*Id.*, at p. 536.) Rather, the court determined that "its investment decisions are not so closely related to its educational decisions to cloak the former with immunity even if the latter are immune." (*Id.*, at p. 537.)

Analyzing the matter in this manner, we can readily observe that elimination of the designation of the Chief Justice to serve ex officio as president of the board of Hastings is not exclusively an internal affair of Hastings. Moreover, repeal of that legislation does not affect significantly, if at all, the administration of Hastings or its academic activities. Nor, so far as we can see, does it significantly affect internal governance of Hastings.

As we accept that the matter is one of statewide concern and that repeal of the provision neither impairs the power of the board of trustees to govern, nor has an impact upon the educational decisions of the institution, we conclude that the Legislature did not violate the autonomy guarantees of article IX, section 9 when it repealed the provision of Education Code section 92205 designating the Chief Justice to serve as president of Hastings.

### III., IV.*

. . . . . . . . . . . . . . . . . . . .

The judgment is affirmed. Respondent is to receive his costs on appeal.

Smith, J., and Benson, J., concurred.

A petition for a rehearing was denied June 21, 1990, and appellant's petition for review by the Supreme Court was denied August 15, 1990. Lucas, C. J., did not participate therein.

---

*See footnote, *ante,* page 1016.