Filed 3/23/23 (unmodified opinion attached)

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| ANA WOOD,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>KAISER FOUNDATION HOSPITALS,<br><br>    Defendant and Respondent. | D079528<br>(Super. Ct. No. 37-2021-00005146-CU-OE-CTL)<br><br>ORDER MODIFYING OPINION<br><br>NO CHANGE IN JUDGMENT |

THE COURT:

It is ordered that the opinion filed February 24, 2023 be modified on footnote 16 (page 25), deleting the word "not" from the sentence, so it reads as follows:

> Because of this disposition, it is unnecessary to consider Wood's alternative arguments that PAGA penalties are "equitable" remedies within the meaning of section 245.8, subdivision (e).

There is no change in the judgment.

HUFFMAN, Acting P. J.

Copies to: All parties

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| ANA WOOD,<br><br>　　Plaintiff and Appellant,<br><br>　　v.<br><br>KAISER FOUNDATION HOSPITALS,<br><br>　　Defendant and Respondent. | D079528<br><br><br><br>(Super. Ct. No. 37-2021-00005146-CU-OE-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Ronald F. Frazier, Judge.  Reversed.  Wood's requests for judicial notice denied; Kaiser's request for judicial notice granted.

Mashiri Law Firm, Alex Asil Mashiri; The Jami Law Firm and Tamim Jami for Plaintiff and Appellant.

Seyfarth Shaw, Christian J. Rowley, Kerry Friedrichs and Kiran Aftab Seldon for Defendant and Respondent.

The judiciary's responsibility to interpret statutes often places courts in the position of trying to decide how the Legislature would have resolved an issue we strongly suspect it never actually considered. We endeavor, as best we can, to be prognosticators. Sometimes, however, our role in statutory interpretation is more that of a detective. The Legislature included a provision or used a particular term in a statute, and it is our job to uncover what it had in mind when it employed those words. In this case we function largely as detectives, hopefully more like Sherlock Holmes than Inspector Clouseau.

California's Healthy Workplaces, Healthy Families Act of 2014 (the Act) (Labor Code,[1] § 245 et seq.) generally requires employers to provide eligible employees with at least three paid sick days per year. The Labor Commissioner and the Attorney General are charged with enforcing this law. Violators may be assessed compensatory as well as liquidated damages, plus civil penalties. (§ 248.5.)

The last clause of section 248.5, subdivision (e) is the focus of this appeal. It provides that "any person or entity enforcing this article on behalf of the public as provided for under applicable state law shall, upon prevailing, be entitled only to equitable, injunctive, or restitutionary relief . . . ." (*Ibid*.) It would seem fairly obvious that the Legislature had something specific in mind when it used the phrase, "enforcing this article on behalf of the public as provided for under applicable state law." It was envisioning some kind of enforcement action. But what was it? In particular, did the Legislature mean to include—and thus restrict—actions by aggrieved employees to recover civil penalties under the Labor Code Private Attorney General Act of 2004 (PAGA) (§ 2698 et seq.) as defendant Kaiser Foundation

---

[1] Undesignated statutory references are to the Labor Code.

2

Hospitals (Kaiser) contends? Or instead, as plaintiff Ana Wood argues, did the Legislature have in mind an entirely different statutory scheme, the Unfair Competition Law (UCL) (Bus. & Prof. Code, § 17200 et seq.)?

The procedural setting of this case perfectly frames the issue as one of statutory interpretation. Wood filed a PAGA action against her former employer Kaiser seeking penalties for alleged violations of the Act. The trial court sustained Kaiser's demurrer without leave to amend, determining that a PAGA action is one brought "on behalf of the public" and since it seeks only civil penalties, is prohibited by section 248.5, subdivision (e).

Following our independent review, we reach a different conclusion. As we explain, the statute's text and history provide compelling evidence that the phrase "on behalf of the public as provided under applicable state law" in section 248.5, subdivision (e) was intended to refer to actions prosecuted under the UCL—*not* PAGA. Accordingly, we reverse the judgment of dismissal.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

Kaiser owns and operates hospitals and medical facilities throughout California. Wood, a nonexempt employee, was paid hourly wages by Kaiser. In February 2021, she filed a PAGA action against Kaiser alleging that as an " 'aggrieved employee' " she was "properly suited to act on behalf [of] the state, and collect civil penalties for all violations committed against" other aggrieved Kaiser employees in California. Her first cause of action claimed that Kaiser violated the Act by not paying sick leave at "the correct rate."

---

[2] Because this case arises after the trial court sustained a demurrer without leave to amend, we assume as true all properly pleaded material facts, but not conclusions of fact or law asserted in the complaint. (See *Sheen v. Wells Fargo Bank N.A.* (2022) 12 Cal.5th 905, 916.)

3

The second cause of action alleges that Kaiser wrongfully denied employees the right to use sick leave. In the third, Wood maintained that Kaiser violated Labor Code provisions regarding vacation pay.

Kaiser demurred to the first cause of action on the grounds that the Act "does not authorize PAGA actions for civil penalties." After an unreported hearing, the court sustained the demurrer without leave to amend.[3] Following voluntary dismissals (without prejudice) of the remaining causes of action, the court entered a judgment of dismissal in Kaiser's favor.

## DISCUSSION

" 'In construing a statute, our task is to ascertain the intent of the Legislature so as to effectuate the purpose of the enactment. [Citation.] We look first to the words of the statute, which are the most reliable indications of the Legislature's intent. [Citation.] We construe the words of a statute in context, and harmonize the various parts of an enactment by considering the provision at issue in the context of the statutory framework as a whole.' [Citation.] 'If the statutory language is unambiguous, then its plain meaning controls. If, however, the language supports more than one reasonable construction, then we may look to extrinsic aids, including the ostensible objects to be achieved and the legislative history.' " (*Kim v. Reins International California, Inc.* (2020) 9 Cal.5th 73, 83 (*Kim*).)

---

[3] The court's minute order initially states that the demurrer is sustained "without leave to amend." But the last paragraph of the order purportedly grants leave to amend and states, "Nothing in this ruling prevents plaintiff from pursuing a PAGA claim; instead, only penalties are prohibited." However, because PAGA "only creates a cause of action for civil penalties" (*ZB, N.A. v. Superior Court* (2019) 8 Cal.5th 175, 188), no amendment consistent with the trial court's ruling was possible. We therefore construe the facially ambiguous order as having sustained the demurrer without leave to amend.

4

The phrase "enforcing this article on behalf of the public" in section 248.5, subdivision (e) is ambiguous. It is susceptible of at least two possible meanings. It could refer to a PAGA action, because relief under PAGA has been characterized as being "designed primarily to benefit the general public, not the party bringing the action." (*Kim, supra*, 9 Cal.5th at p. 81.) But how PAGA relief has been characterized by the courts and who it "primarily" benefits does not necessarily indicate that the Legislature had PAGA in mind when it referred to "enforcing this article *on behalf of* the public." (§ 248.5, subd. (e), italics added.) It might have instead been describing an action alleging a claim under the UCL, which can be brought on behalf of the public by various government officials, and in which even private individuals can seek public injunctive and restitutionary relief. (See, e.g., *McGill v. Citibank, N.A.* (2017) 2 Cal.5th 945, 959; *Animal Legal Defense Fund v. Mendes* (2008) 160 Cal.App.4th 136, 147 [noting that under the UCL, the Attorney General and certain other public officials can sue on behalf of the public at large].) Even Kaiser concedes that the UCL "may serve as a vehicle to enforce provisions of the [Act]." As in every question of statutory interpretation, the crucial issue is what did *the Legislature* mean?

PAGA became effective in 2004, a decade before the Act was adopted. (Stats. 2003, ch. 906 (2003–2004 Reg. Sess.) (Sen. Bill No. 796); Stats. 2014, ch. 317, § 3 (2013–2014 Reg. Sess.) (Assem. Bill No. 1522).)[4] The Legislature is presumed to have been aware of PAGA when it adopted the Act (*Hirschfield v. Cohen* (2022) 82 Cal.App.5th 648, 661), and because the

[4] Kaiser's request for judicial notice of all versions of Assembly Bill No. 1522 and of the Senate Judiciary Committee analysis of that bill as amended June 15, 2014 is granted. (Evid. Code, §§ 452, subd. (c), 459.)

5

premise for Kaiser's argument is that the Legislature intended to restrict the use *of PAGA* to enforce of the Act, we start our analysis with PAGA.

Prior to 2004, California's Labor Code was enforced by the Labor and Workforce Development Agency (LWDA), which could assess and collect civil penalties for violations. (See Sen. Com. on Judiciary, Analysis on Sen. Bill No. 796 (2003–2004 Reg. Sess.) as amended Apr. 22, 2003, p. 1 (Bill Analysis).)[5] In 2003, a federal study indicated that garment industry employers in Los Angeles alone, collectively employing more than 100,000 workers, had over 33,000 serious and ongoing wage violations; during the same period, the LWDA had issued fewer than 100 wage citations per year for all industries throughout the state. (Bill Analysis, *supra*, Sen. Bill No. 796, p. 2.) Two core problems were hampering the prosecution of Labor Code violations. First, district attorneys were reluctant to prosecute them because labor matters were considered low priorities. Second, allocated government resources simply could not keep pace with the sprawling, and often "underground" economy.

The Legislature's solution was to " 'deputize and incentivize employees uniquely positioned to detect and prosecute . . . violations.' " (*Medina v. Vander Poel* (E.D.Cal. 2015) 523 B.R. 820, 824–825.) Effective January 2004, PAGA declared it was "in the public interest to allow aggrieved employees, acting as private attorneys general, to recover civil penalties for Labor Code violations, with the understanding that labor law enforcement agencies were to retain primacy over private enforcement efforts." (*Arias v. Superior Court* (2009) 46 Cal.4th 969, 980 (*Arias*).)

---

[5] This bill analysis is cited and discussed in both parties' briefs, but neither side specifically requested that we take judicial notice of it. We do so on our own motion. (Evid. Code, §§ 452, 459.)

PAGA does not create any new substantive rights or legal obligations. It " ' "is simply a procedural statute allowing an aggrieved employee to recover civil penalties—for Labor Code violations—that otherwise would be sought by state labor law enforcement agencies." ' " (*Bautista v. Fantasy Activewear, Inc.* (2020) 52 Cal.App.5th 650, 657.) Although an aggrieved employee is the named plaintiff in a PAGA action, the dispute is actually between the state and the employer. (*Arias*, *supra*, 46 Cal.4th at p. 986.) Under PAGA, 75 percent of the penalties recovered go to the LWDA; the remaining 25 percent are disbursed to employees aggrieved by the particular violation. (§ 2699, subd. (i).)

The UCL in its current form was enacted in 1977 (Stats. 1977, ch. 299, § 1, p. 1202; Bus. & Prof. Code, § 17200 et seq.), although it incorporated existing elements from a predecessor statute that had been in place for many years. (See generally *Kraus v. Trinity Management Services, Inc.* (2000) 23 Cal.4th 116, 129–131.) When considering the enactment of PAGA more than 20 years later, the Legislature realized that the UCL already authorized a private action alleging unfair business practices. But for two reasons, it was considered an "inadequate tool" for enforcing the Labor Code. First, the UCL "only permits private litigants to obtain injunctive relief and restitution," and that was considered an insufficient deterrent. (Bill Analysis, *supra*, Sen. Bill No. 796, as amended Apr. 22, 2003, p. 5.) Second, it did not provide for an attorney's fee award to a prevailing plaintiff, and the sponsors of the proposed PAGA legislation believed that "few aggrieved employees can afford to bring an action to enjoin the violations." (Bill Analysis, *supra*, Sen. Bill No. 796, p. 6.)

The Legislature was also "mindful" of "well-publicized" pre-Proposition 64 allegations of abuse of the UCL by private plaintiffs who had not suffered

actual harm.  (See *People ex rel. Lockyer v. Brar* (2004) 115 Cal.App.4th 1315, 1317.)[6]  Determined to avoid a similar issue in PAGA, the bill granted standing only to "aggrieved" employees.  As explained in the Bill Analysis:

> "First, unlike the UCL, this bill would not open private actions up to persons who suffered no harm from the alleged wrongful act.  Instead, private suits for Labor Code violations could be brought only by an 'aggrieved employee'—an employee of the alleged violator against whom the alleged violation was committed. . . .
>
> "Second, a private action under this bill would be brought by the employee 'on behalf of himself or herself or others— that is, fellow employees also harmed by the alleged violation—***instead of 'on behalf of the general public' as private suits are brought under the UCL.***"  (Bill Analysis, *supra*, Sen. Bill No. 796, as amended Apr. 22, 2003, p. 7, italics and boldface added.)[7]

---

[6]  In November 2004 the UCL was amended by Proposition 64 to provide that only private persons " 'who [have] suffered injury in fact and [have] lost money or property' " may sue to enforce it.  (See generally, *Branick v. Downey Savings & Loan Assn.* (2006) 39 Cal.4th 235, 240–241.)

[7]  Kaiser asserts that the Senate Committee analysis "does not help" because when the Act became law in 2014, the UCL no longer authorized actions by any person acting on behalf of the general public.  (See fn. 6, *ante.*)  Thus, it maintains that section 248.5, subdivision (e)'s use of the term "on behalf of the public" cannot refer to UCL claims because by 2014, those claims had standing requirements much like PAGA's.  But while that might be true as to individual plaintiffs, a civil action under the UCL may be brought on behalf of the public by the Attorney General, any district attorney, or any city attorney in a city having a population in excess of 750,000.  (Bus. & Prof. Code, § 17204.)  Proposition 64 did not change that.  (*Abbott Laboratories v. Superior Court* (2020) 9 Cal.5th 642, 658.)  Thus, even after Proposition 64, local prosecuting authorities not otherwise given standing under the Act may bring a civil action *on behalf of the public* under the UCL.  (Bus. & Prof. Code, § 17204.)  Such an action would fall within the last clause of section 248.5, subdivision (e) limiting remedies.

8

This legislative understanding—that PAGA actions were brought by an aggrieved employee "on behalf of himself or herself" and "fellow employees also harmed" (as distinguished from UCL actions, which were brought "on behalf of the general public")—was given the force of law. Section 2699, subdivision (a) provides in part:

> "Notwithstanding any other provision of law, any provision of this code that provides for a civil penalty to be assessed and collected by the [LWDA] . . . for a violation of this code, may, as an alternative, be recovered through a civil action brought by an aggrieved employee *on behalf of himself or herself and other current or former employees . . . .*" (*Ibid.*, italics added.)

So is a PAGA action one that is brought "on behalf of the public"? The answer is one that perhaps only a law professor could love: yes and no.

In a PAGA action, courts recognize that the aggrieved employee/plaintiff acts as an *agent* of the state. Like any other agency relationship, the agent in a PAGA action (the aggrieved employee/plaintiff) acts for the benefit of the principal.[8] In this sense, a PAGA action is brought on behalf of the state or public. (See *ZB, N.A. v. Superior Court* (2019) 8 Cal.4th 175, 185 ["All PAGA claims are 'representative' actions in the sense that they are brought on the state's behalf. The employee acts as ' "the proxy or agent of the state's labor law enforcement agencies" and "represents the same legal right and interest as" ' those agencies — ' "namely, recovery of

---

[8]  There are, however, also some unique aspects to the PAGA agency relationship. Unlike the typical agent, the PAGA plaintiff must have been personally affected by the same wrong that it complains about on behalf of its principal. (§ 2699, subd. (c).) And unlike an ordinary principal, in a PAGA action the state delegates enforcement to the employee entirely and irrevocably. (See *Lewis v. Simplified Labor Staffing Solutions, Inc.* (2022) 85 Cal.App.5th 983, 998–999.)

civil penalties that otherwise would have been assessed and collected by the [LWDA]" ' "]; see also *Arias, supra,* 46 Cal.4th at p. 986; *Kim, supra,* 9 Cal.5th at p. 87 ["every" PAGA action is one "on behalf of the state" with the plaintiff acting "as the state's designated proxy"].)

But from the Legislature's perspective and particularly as compared to a UCL claim, a PAGA action is *not* brought "on behalf of the public," but instead on behalf of other aggrieved employees. The text of section 2699, subdivision (a) plainly says so. (See *Santos v. El Guapos Tacos, LLC* (2021) 72 Cal.App.5th 363, 372, [stating that "as a matter of law" a PAGA claim is " 'brought by an aggrieved employee on behalf of himself or herself and other current or former employees' "].) In light of the express language in PAGA's section 2699, subdivision (a), it would be surprising for the Legislature to refer to an enforcement action "on behalf of the public" if it meant a PAGA claim.

Seeking further clarification, we turn to the Act's legislative history. Although ultimately enacted in 2014, proposed legislation involving mandatory sick pay—and particularly section 248.5, subdivision (e)—actually traces its roots to 2008.[9] That part of the initial Assembly Bill No. 2716 (2007–2008 Reg. Sess.) is a single long paragraph, but it can conveniently be broken down into three parts: (1) Standing, (2) Remedies, and (3) Exceptions to remedies. The first part on standing stated:

___

[9]    As a general rule, unpassed legislation provides only limited guidance when interpreting legislation enacted into law. But an exception to that rule exists where, as here, reasonable inferences can be drawn from the evolution of statutory text. (See, e.g., *Athletics Investment Group LLC v. Dept. of Toxic Substances Control* (2022) 83 Cal.App.5th 953, 974 ["The fact that the Legislature made this change to the language of the bill during the political process has implications for a proper construction of the statute."].)

"The department [of Industrial Relations], the Attorney General, a person aggrieved by a violation of this article, an entity a member of which is aggrieved by a violation of this article, or another person or entity acting on behalf of the public as provided for under applicable state law, may bring a civil action in a court of competent jurisdiction against the employer or other person violating this article . . . ."  (See Legis. Counsel's Dig., Assem. Bill No. 2716 (2007–2008 Reg. Sess.) as introduced Feb. 22, 2008, § 6 [proposed § 248.5, subd. (e)].)

The second part on remedies stated:

"and, upon prevailing, shall be entitled to such legal or equitable relief as may be appropriate to remedy the violation, including reinstatement, back pay, the payment of any sick leave unlawfully withheld, the payment of an additional sum as liquidated damages in the amount of fifty dollars ($50) to each employee or person whose rights under this article were violated for each day or portion thereof that the violation occurred or continued, plus, if the employer has unlawfully withheld paid sick leave to an employee, the dollar amount of paid sick leave withheld from the employee multiplied by three; or two hundred fifty dollars ($250), which amount is greater; and reinstatement in employment or injunctive relief; and further shall be awarded reasonable attorney's fees and costs . . . ."  (See Legis. Counsel's Dig., Assem. Bill No. 2716 (2007–2008 Reg. Sess.) as introduced Feb. 22, 2008, § 6 [proposed § 248.5, subd. (e)].)

The third part on exception to remedies stated:

"provided, however, that any person or entity enforcing this article on behalf of the public as provided under applicable state law shall, upon prevailing, be entitled only to equitable, injunctive, or restitutionary relief, and reasonable attorney's fees and costs."  (See Legis. Counsel's Dig., Assem. Bill No. 2716 (2007–2008 Reg. Sess.) as introduced Feb. 22, 2008, § 6 [proposed § 248.5, subd. (e)].)as introduced Feb. 22, 2008, § 6 [proposed § 248.5, subd. (e)].)

11

Thus, as originally drafted as part of 2008 Assembly Bill No. 2716, section 248.5, subdivision (e)'s standing provision distinguished between an action by (1) state officials, (2) a person aggrieved, (3) a labor organization for an aggrieved member, and (4) "another person or entity acting on behalf of the public as provided for under some other state law." (See Legis. Counsel's Dig., Assem. Bill No. 2716 (2007–2008 Reg. Sess.) § 6 [proposed § 248.5, subd. (e)].) The "some other state law" in category (4) must be a reference to the UCL rather than PAGA. Only aggrieved employees can bring PAGA claims, so the fourth category would be unnecessary and duplicative of category (2) if it was intended to mean a PAGA action. In contrast, local prosecutors (not otherwise identified in section 248.5) can file UCL actions, so interpreting the fourth category to mean a UCL action adds something substantive to the standing provisions.

After the discussion of standing, the next part of the paragraph provided a smorgasbord of remedies, including compensatory damages, liquidated damages, and civil penalties. This structure (standing first, then remedies) was logical, but it presents an obvious drafting problem. Some of the remedies contained in the second part (such as liquidated damages and penalties) were not recoverable as a matter of law by certain types of plaintiffs given standing in the first part. For example, as a matter of law in a UCL action brought by a private person, only injunctive relief and restitution would be available remedies. (Bus. & Prof. Code, §§ 17203; 17535.) Thus, if the action brought "on behalf of the public" was a reference to a UCL action, then somewhere else the statute had to make clear that liquidated damages and penalties were not recoverable.

The final clause in section 248.5, subdivision (e) must have been drafted for this purpose, and thus it is no coincidence that the restriction to

12

"equitable, injunctive, or restitutionary relief" matches the limited remedies available under the UCL. (See *Hambrick v. Healthcare Partners Medical Group, Inc.* (2015) 238 Cal.App.4th 124, 155 (*Hambrick*).) Any person or entity enforcing the statute "on behalf of the public as provided under applicable state law"—i.e., a UCL plaintiff—would be limited to UCL remedies. This was meant to clarify that to the extent the preceding clauses in section 248.5 provided for relief beyond that available under the UCL, those additional remedies were not available in a UCL action based on a violation of the mandatory sick pay law.[10]

Although the 2008 legislation was not passed, it was resurrected the following year as Assembly Bill No. 1000. (See Legis. Counsel's Dig., Assem. Bill No. 1000 (2009–2010 Reg. Sess.).) Deletions from the 2008 version are indicated in strikeout, and additions in double underlining below. The first part on standing stated:

> "(e) ~~The department [of Industrial Relations]~~, <u>The Labor Commissioner</u>, the Attorney General, a person aggrieved by a violation of this article, <u>or</u> an entity a member of which is aggrieved by a violation of this article, ~~or another person or entity acting on behalf of the public as provided for under applicable state law,~~ may bring a civil action in a court of competent jurisdiction against the employer or other person violating this article . . . ."[11] (See Legis. Counsel's Dig., Assem. Bill No. 1000 (2009–2010 Reg. Sess.) as introduced Feb. 27, 2009 [proposed § 248.5, subd. (e)].)

---

[10] Thus, contrary to Kaiser's assertion, the limitation of remedies for UCL actions is not "redundant." Without that clarification in the last clause of section 248.5, subdivision (e), the statute might be read to expand UCL remedies for sick pay violations.

[11] The second part on remedies and the third part on limitations for UCL remedies was unchanged from the 2008 version. (Assem. Bill No. 1000 (2009–2010 Reg. Sess.).)

Thus, the bill's author deleted language appearing in the earlier 2008 version that provided an enforcement action could be brought by "another person or entity acting on behalf of the public as provided for under applicable state law." But interestingly, the last clause in section 248.5, subdivision (e), restricting remedies in such an action, remained unchanged in the 2009 version.

Why would this new version of the bill delete the action "on behalf of the public" in the standing provision but retain the "on behalf of the public" limitation of remedies? Because the UCL itself already conferred standing, the drafters of the legislation likely concluded that an express reference to standing for a UCL claim was unnecessary. In enacting the statute on mandatory sick pay, it simply went without saying that a person or entity could bring the action on behalf of the public *as provided under some other state law*. If some other law provided a right to enforce sick leave rules, then there was no need to repeat that again in section 248.5, subdivision (e). At the same time, the limitation on UCL remedies in the last clause did no harm in that it accurately conveyed the Legislature's intent and forestalled any argument that the Act should be construed to expand UCL remedies when a sick pay violation was involved. And because attorney fees are not recoverable under the UCL (see *Hambrick*, *supra*, 238 Cal.App.4th at p. 157), it also assured UCL plaintiffs successfully enforcing the Act the right to seek attorney's fees.

In any event, the 2009 bill also died, and similar legislation was not proposed again until Assembly Bill No. 400 in 2011. (See Legis. Counsel's Dig., Assem. Bill No. 400 (2011–2012 Reg. Sess.) as introduced Feb. 14, 2011 [proposed § 248.5, subd. (e)].) The 2011 version of section 248.5, subdivision

14

(e) was identical to that in the 2009 bill.  The 2011 bill suffered the same fate, and similar legislation would not be reintroduced until 2014.

In 2014, the Legislature finally enacted mandatory sick pay in Assembly Bill No. 1522.  (Stats. 2014, ch. 317, § 3 (2013–2014 Reg. Sess.) effect. Jan. 1, 2015.)  Pertinent here, there were two changes from the prior (unpassed) versions.

Like its predecessor bills, as introduced Assembly Bill No. 1522 authorized the Labor Commissioner, the Attorney General, an aggrieved person, or an entity a member of which is aggrieved to bring a civil enforcement action.  (See Legis. Counsel's Dig., Assem. Bill No. 1522 (2013–2014 Reg. Sess.) Jan. 16, 2014, § 4 [proposed § 248.5, subd. (e)].)  But opponents had raised "particular concern about some of the enforcement mechanisms contained in this bill, including the private right of action." (Assem. Floor Analyses, 3d reading analysis of Assem. Bill No. 1522 (2013–2014 Reg. Sess.) as amended May 28, 2014, p. 4.)  Addressing that concern, on May 28, 2014, the bill was amended to delete the authorization for both the private right of action (aggrieved persons) and the action brought by a labor organization (i.e., an entity of which such a person was a member). The changes in this amended version of the bill are indicated below:

> "The Labor Commissioner, <u>or</u> the Attorney ~~General, a person aggrieved by a violation of this article, or an entity a member of which is aggrieved by a violation of this article, or another person or entity acting on behalf of the public as provided for under applicable state law,~~ <u>General</u> may bring a civil action in a court of competent jurisdiction against the employer or other person violating this article . . . ." (Assem. Com. on Appropriations, Analysis of Assem. Bill No. 1522 (2013–2014 Reg. Sess.) as amended May 28, 2014, p. 13 [proposed § 248.5, subd. (e)].)

Did these changes manifest an intent to preclude an aggrieved employee from bringing a PAGA action? Every indication is that it did *not*. PAGA itself creates standing for aggrieved employees to collect civil penalties otherwise recoverable by the LWDA. (§ 2699, subd. (a).) Thus, eliminating a private right of action *for damages* is an entirely different issue. Moreover, despite deleting the private right of action, the May 28, 2014 bill analysis assured its readers that although "recent amendments" deleted standing for aggrieved persons, "it should be noted that the provisions of this bill are in addition to and independent of any other rights, remedies, or procedures available under any other law and do not diminish, alter or negate any other legal rights, remedies, or procedures available to an aggrieved person." (Assem. Floor Analyses, 3d reading analysis of Assem. Bill No. 1522 (2013–2014 Reg. Sess.) as amended May 28, 2014, p. 4.) Those "other . . . procedures" included PAGA.

About two weeks later, the bill was amended to give this assurance the force of law. On June 15, 2014, section 245, subdivision (b) was added to the bill, providing:

> "The provisions of this article are in addition to and independent of any other rights, remedies, or procedures available under any other law and do not diminish, alter, or negate any other legal rights, remedies, or procedures available to an aggrieved person." (See Legis. Counsel's Dig., Assem. Bill No. 1522 (2013–2014 Reg. Sess.) as amended June 15, 2014, p. 8 [proposed § 245, subd. (b), italics omitted].)

These two changes: (1) deleting the private right of action, but (2) making clear that it was not intended to "diminish, alter, or negate" any existing rights or procedures available to an "aggrieved person,"

16

remained part of the bill and were enacted into law. (§ 245, subd. (b); Stats. 2014, ch. 317, § 3 (Assem. Bill No. 1522).)

The reasonable inferences from this history all point in the same direction. PAGA was created because of the stark reality that the Labor Commissioner and Attorney General lacked adequate resources to enforce labor laws. The Legislature believed that unless aggrieved employees acting as private attorneys general were authorized to enforce those laws, employers would continue to violate them on a massive scale. Studies showed these violations were costing the state enormous amounts of cash—between $3 to $6 *billion* annually—as a result of employers operating outside the state's labor laws. (Bill Analysis, *supra,* Sen. Bill No. 796, as amended Apr. 22, 2003, p. 2.)

This recognized need for private enforcement of labor laws was compounded by the many robust policy reasons for mandating paid sick leave. As of 2014 when the Act became law, roughly 39 percent of the state workforce received no sick leave benefits, leaving "seven million Californians with few options when personal or family needs arise." (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 1522 (2013–2014 Reg. Sess.) as amended Aug. 18, 2014, p. 9.) Workers without paid sick leave were either expected to work while sick, risking the health and safety of coworkers and customers, or stay home and forego wages, jeopardizing the worker's own financial ability to survive. (*Ibid*.)

Given the perceived necessity for mandating minimum paid sick leave, coupled with its documented understanding that traditional government institutions would be unable to adequately assure compliance, it seems inconceivable that the Legislature intended to prohibit PAGA actions to enforce the Act. Doing so would essentially leave *only* the Labor

17

Commissioner and the Attorney General to litigate violations—and the Legislature had already determined a decade earlier that these agencies were flatly incapable of adequately enforcing labor laws. To accept Kaiser's argument is to believe the Legislature intended the Act to be nothing more than statutory cotton candy—something that looks nice but has no substance. We are confident that was not its intent.

Moreover, when amending Assembly Bill No. 1522 in May and June 2014, the Legislature could have easily and expressly abolished a PAGA remedy when, in the face of staunch opposition to the bill, it deleted the private right of action. But instead, it did the opposite. In section 245, subdivision (b), it codified that the Act does not "diminish, alter, or negate" any other *procedures* "available to an aggrieved" person. (*Ibid.*) It is no small coincidence that PAGA is a *procedural* device that uses the same terminology, conferring standing to an "aggrieved employee." (§ 2699, subd. (a).)[12]

---

[12] Disagreeing with this analysis, Kaiser contends that section 245, subdivision (b) is best understood as protecting a private plaintiff's ability to pursue a UCL action. But if that were the intent, one would expect the Legislature to have used then-existing UCL terminology—preserving an action by "a person who has suffered injury in fact and has lost money or property" as a result of the violation. (See Bus. & Prof. Code, § 17204.) Instead, however, the Legislature used PAGA terminology—"aggrieved" employee. Kaiser also maintains that section 245, subdivision (b) was intended to carve out "the Kin Care statute[s]," sections 233 to 234, which permit employees to use half of their provided sick leave to care for certain family members. But there is not so much as a whisper of that intent in the legislative history. And given the timing of the amendment adding section 245, subdivision (b), the more reasonable interpretation is the Legislature wanted to make clear that despite eliminating the private right of action, a PAGA action was still authorized.

It is of course true, as Kaiser points out, that section 248.5, subdivision (e) only authorizes the Labor Commissioner or the Attorney General to collect penalties. But that should not be interpreted to prohibit an aggrieved employee from bringing a PAGA action. Section 248.5, subdivision (e) does not need to authorize a PAGA action because such actions are *already* authorized by the PAGA statute itself. It begins by stating, "*Notwithstanding any other provision of law*, any provision of this code that provides for a civil penalty to be assessed and collected by the [LWDA] . . . may, as an alternative, be recovered through a civil action brought by an aggrieved employee . . . ." (§ 2699, subd. (a), italics added.) The statutory phrase " 'notwithstanding any other provision of law' " is a term of art that " 'declares the legislative intent to override all *contrary* law.' " (*Arias, supra*, 46 Cal.4th at p. 983.) It means that an aggrieved employee's rights under PAGA control, despite the existence of other laws that might otherwise govern or restrict. (See *California Taxpayers Action Network v. Taber Construction, Inc.* (2017) 12 Cal.App.5th 115, 130.) Illustrating this point, there are many other statutes that on their face would only permit the Labor Commissioner to recover penalties, yet have instead been enforced by an aggrieved employee under PAGA. (See, e.g., § 226.3 [providing that "the Labor Commissioner shall" enforce this section], *Raines v. Coastal Pacific Food Distributors, Inc.* (2018) 23 Cal.App.5th 667, 675 [PAGA action to enforce § 226.3]; § 256 [providing that "[t]he Labor Commissioner shall impose a civil penalty"], and *Villacres v. ABM Industries Inc.* (2010) 189 Cal.App.4th 562, 579 [PAGA action to recover a civil penalty for violation of section 256].)

Similarly, that an employee cannot file an *individual* action for violations of the Act does not mean the Legislature also intended to preclude

19

a PAGA action based on the same alleged violation.  PAGA is not a private right of action, but rather a procedural device under which an agent or proxy of the state enforces the government's ability to collect penalties.  It applies even where there is no private right of action.  (See, e.g., *Noe v. Superior Court* (2015) 237 Cal.App.4th 316, 339 [where a Labor Code provision provides for a civil penalty and contains no language suggesting it is recoverable directly by employees, a PAGA action is available, although no private right of action].)

In response to a question during oral argument, Kaiser's attorney asserted that the last clause in section 248.5, subdivision (e)—"any person or entity enforcing this article on behalf of the public"—could *only* refer to a private person bringing a UCL action (and not a "public actor" such as a local prosecutor) because (1) Labor Code section 18 defines "person" in a way that excludes public entities, and (2) in *Wells v. One2One Learning Foundation* (2006) 39 Cal.4th 1164 (*Wells*), the Supreme Court held "that same language, that definition of person" does not include "public actors."

For several reasons, we understand the statute differently.  Section 18 defines "person" to mean "any person, association, organization, partnership, business trust, limited liability company, or corporation."  The literal textual meaning of this definition might seem to exclude government agencies.  Obviously, a government entity is not a natural person or any of the types of business organizations listed in section 18.

But as in so many other areas of law, what may seem simple on its face is not.  To begin with, Kaiser's argument conveniently overlooks the word "entity" in this part of the statute.  Moreover, nothing in section 18 expressly excludes government entities either.  As *Wells* recognized, "[G]overnment agencies are excluded from the operation of general statutory provisions 'only

20

if their inclusion would result in an infringement upon sovereign governmental powers . . . . Pursuant to this principle, *governmental agencies have been held subject to legislation which, by its terms, applies simply to any 'person.'* " (*Wells, supra,* 39 Cal.4th at p. 1192, italics added.)

For example, in *State v. Marin Municipal Water Dist.* (1941) 17 Cal.2d 699, the Streets and Highways Code provided that any "person" maintaining a pipeline could be required to move it upon written demand when necessary for safety or public improvement purposes. The issue was whether it encompassed municipal water districts. Much like Labor Code section 18 here, another provision of the Streets and Highways Code defined "person" as " 'any person, firm, partnership, association, corporation, organization, or business trust.' " (*Marin Municipal Water Dist.*, at p. 704.) Applying this law to municipal water districts would not limit their otherwise valid power but would only operate to prevent them from exercising their franchises in a manner contrary to law. Thus, the Supreme Court concluded that the Legislature intended to embrace municipal water districts within the statute's application. In short, the statutory definition of a "person" encompassed a government entity.

As explained in *Los Angeles v. San Fernando* (1975) 14 Cal.3d 199 (*Los Angeles*), the rule Kaiser invokes here—*excluding* governmental agencies from the operation of general statutory provisions—applies "only if their inclusion would result in an infringement upon sovereign governmental powers. 'Where . . . no impairment of sovereign powers would result, the reason underlying this rule of construction ceases to exist and the Legislature may properly be held to have intended that the statute apply to governmental bodies even though it used general statutory language only.' " (*Id.* at pp. 276–277.) Thus, in *Los Angeles*, the court interpreted the language

21

"person, firm or corporation" in Civil Code section 1007 (pertaining to title by prescription) to include governmental agencies. (See also *Regents of University of Cal. v. Superior Court of Alameda County* (1976) 17 Cal.3d 533, 536 [concluding that " 'person, association, copartnership or corporation' " in usury laws included public entity); *Flournoy v. State* (1962) 57 Cal.2d 497, 498–499 [applying to a state government a wrongful death statute attaching liability to any "person" responsible for another's death].)

*Wells* is a good illustration of the principle. That case involved a lawsuit against a school district that allegedly defrauded the State. The Supreme Court considered whether public school districts were "persons" subject to suit under the California False Claims Act. (*Wells, supra*, 39 Cal.4th at p. 1179; Gov. Code, § 12650 et seq.) It concluded that the statutory definition—"any natural person, corporation, firm, association, organization, partnership, limited liability company, business, or trust" excluded public schools *for purposes of imposing liability*. (*Wells,* at p. 1166.) The *Wells* court explained the need to protect public school districts from "draconian liabilities" of the California False Claims Act, which include double and treble damages. (*Id.* at p. 1193.) The court reasoned that the Legislature could not have intended to subject financially strapped school districts to such liabilities, given their responsibility to provide free public education. (*Id.* at pp. 1193–1197.)

But in sharp contrast here, we are not dealing with a statute that imposes liability or some other negative consequence on a government entity. To the contrary, to the extent it is capable of enforcing the Labor Code, the government's role is to do just that—enforce it against private employers. The rationale for the *Wells* holding simply does not apply here.

22

In short, whether the Legislature intends a governmental entity to be a "person" is not a simple question, and the answer is almost always contextual. Here, the phrase "person or entity" in the last clause of section 248.5, subdivision (e) is broad enough to include public agencies seeking to enforce the UCL, and we think the Legislature likely acted with that understanding when it passed the Act.

Perhaps Kaiser's best argument is that "[e]very federal district court to have considered the issue" has reached the opposite conclusion—that the Act " 'expressly prohibits a private plaintiff from recovering PAGA penalties.' " The leading case is *Stearne v. Heartland Payment Sys. LLC* (E.D.Cal., Feb. 6, 2018, No. 2:17-cv-01181-MCE-CKD) 2018 U.S. Dist. Lexis 20679 (*Stearne*). But without analyzing the PAGA statute itself or any legislative history whatsoever, the district court in *Stearne* thought section 248.5, subdivision (e) "makes clear that persons or entities seeking to recover on behalf of the public may not recover penalties" and, therefore, a PAGA action, which is brought on "behalf of the public" is barred because it seeks only penalties. (*Stearne*, at p. *6.)

Although we are not bound by federal district court decisions (*Sanchez v. Bezos* (2022) 80 Cal.App.5th 750, 769), we look to "analytically sound" reasoning in federal opinions as persuasive. (*Futrell v. Payday California, Inc.* (2010) 190 Cal.App.4th 1419, 1432, fn. 6.)[13] For reasons already discussed, we are not persuaded by the reasoning in *Stearne*. The other federal trial court decisions that Kaiser relies on—*Segal v. Aquent LLC*

---

[13] Conversely, California state trial court decisions in other cases have no precedential value and cannot be cited. (*Bolanos v. Superior Court* (2008) 169 Cal.App.4th 744, 761; Cal. Rules of Court, rule 8.1115.) Accordingly, Wood's requests for judicial notice of minute orders in four other superior court cases is denied.

23

(S.D.Cal., Sept. 24, 2018, No. 18cv346-LAB (JLB)) 2018 U.S. Dist. Lexis 164610, page *19, footnote 5 and *Rudolph v. Herc Rentals* (C.D.Cal., Aug. 27, 2021, No. 2:20-cv-05412-ODW (Ex)) 2021 U.S. Dist. Lexis 244970, page *14 also contain no serious statutory analysis, do not discuss any legislative history materials, and merely cite *Stearne* and other district court decisions that have followed it.  We decline to follow these federal district court decisions for the same reasons.[14]

Kaiser also maintains that if interpreted to preserve PAGA claims, section 245, subdivision (b) (providing that the Act is "in addition to" any other "rights, remedies, or procedures" under "any other law") is "irreconcilable with" section 246, subdivision (i).  That statute requires employers to provide employees with written notice of the amount of paid sick leave available.  Section 246 gives the employer the option of including that notice in a wage statement already required by section 226, which shows certain information including gross wages earned, deductions, and net wages earned.[15]  Or it can provide the employee with a separate sick leave document.  Either way, the penalties for noncompliance specified in section 246 shall be "in lieu of the penalties provided for a violation of [s]ection 226."  In other words, the fact that section 246 notice can be satisfied in a section

---

[14]    Kaiser also relies on *Titus v. McLane Foodservice, Inc.* (E.D.Cal., Sept. 14, 2016, No. 2:16-cv-00635-KJM-EFB) 2016 U.S. Dist. Lexis 125116. However, that court expressly declined to address the argument that section 248.5, subdivision (e) bars a PAGA action.  (*Titus*, at p. *15.)

[15]    Section 226, subdivision (a) generally requires an employer to provide employees with an itemized written statement showing total hours worked, the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, all deductions, gross/net wages earned, the dates for which the employee is being paid, and other identifying information.

226 wage statement does not permit the employee to recover section 226 penalties for what is, fundamentally, a section 246 violation.

Kaiser appears to argue that if section 245, subdivision (b) is read to authorize all remedies (including a PAGA action), then any remedy excluded under section 246, subdivision (i) would nevertheless be available under section 245, subdivision (b)—an internal inconsistency creating an absurd result. We find this argument difficult to follow, and more difficult to accept. Section 245, subdivision (b) simply provides that to the extent an aggrieved person has greater rights, remedies, or procedures available under some other law, nothing in the Act diminishes, alters, or negates such rights. Section 226 does not provide a right to written notice of available paid sick leave. So the fact that sick leave notice can be included in a section 226 wage statement, avoiding the need for a separate sick leave document, does not create an otherwise "available" remedy, a point that section 246 merely clarifies. There is no conflict between section 245, subdivision (b) and section 246, subdivision (i).

In sum, we hold that section 248.5, subdivision (e) does not preclude an aggrieved employee from bringing a PAGA action for violations of the Act. Reasonably construed according to its text, history, and context, the phrase, "on behalf of the public as provided for under applicable state law" refers to a UCL claim and not a PAGA action. (§ 248.5.) Because the superior court's ruling was based on the opposite conclusion, the judgment of dismissal must be reversed.[16]

---

[16] Because of this disposition, it is unnecessary to consider Wood's alternative arguments that PAGA penalties are not "equitable" remedies within the meaning of section 245.8, subdivision (e).

## DISPOSITION

The judgment of dismissal is reversed.  Wood is entitled to costs on appeal.


DATO, J.

WE CONCUR:


HUFFMAN, Acting P. J.


DO, J.

26